**In re M.O.R., Appellant.**

**No. 03–FS–980.**

District of Columbia Court of Appeals.

Argued Nov. 24, 2003.
Decided June 17, 2004.

Jaclyn S. Frankfurt, Public Defender Service, with whom James Klein and Jonathan W. Anderson, Public Defender Service, were on the brief, for appellant.

Sidney Bixler, Assistant Attorney General, with whom Robert J. Spagnoletti, Attorney General, for the District of Columbia Edward E. Schwab, Acting Deputy Attorney General, and Rosalyn Calbert Groce, Supervisory Attorney General, were on the brief, for the District of Columbia.*

Before FARRELL, RUIZ and GLICKMAN, Associate Judges.

RUIZ, Associate Judge:

This appeal calls upon us to delineate the scope of the trial court's authority *vis à vis* the Director of Social Services in the termination of certain juvenile proceedings. Appellant, M.O.R., challenges an order of the trial court denying his motion to terminate proceedings notwithstanding that the Director of Social Services decided not to seek an extension of his probationary period, and requiring him to continue to abide by the conditions of his probation. We hold that the trial court exceeded its authority in denying M.O.R.'s motion to terminate his probation. Treating this action as one brought in the nature of a petition for mandamus, we remand the case to the trial court with instructions to enter an order terminating the proceedings as required by D.C.Code § 16–2322(e) (2001) and Super. Ct. Juv. R. 32(f)(4).

## I.

### Background

The procedural history of this case is central to our analysis, so we set it out in detail. Appellant, who was eighteen years old at the time, was placed on probation for one year on July 23, 2002 after pleading guilty to two counts of simple assault. The conditions of probation required that appellant participate in sex offender counseling and refrain from soliciting persons for purposes of prostitution.

The trial court held several probation review hearings between July 23, 2002 and July 18, 2003. During this period, the trial court also received progress reports and other information from the assigned probation officer, Oscar Claros. On March 5, 2003, the probation officer filed a written progress report with the trial court which noted that appellant had adjusted well to community supervision, maintained em-

---

* At the time the briefs were filed, Mr. Bixler, Mr. Spagnoletti, Mr. Schwab and Ms. Groce were called Assistant Corporation. Counsel, Corporation Counsel, Acting Deputy Corporation Counsel, and Supervisory Corporation Counsel, respectively. Since that time, however, the Mayor of the District of Columbia has issued an executive order re-designating the Office of Corporation Counsel as the Office of the Attorney General for the District of Columbia. *See* Mayoral Order No. 2004–92, 51 D.C. Reg. 6052 (May 26, 2004) (citing D.C.Code §§ 1–204–22(2) & (11) (2001)). We accordingly employ the new titles throughout our discussion.

ployment, attended classes in the evening, tested negative for drugs, and complied with counseling services. Mr. Claros recommended that M.O.R.'s probation be terminated successfully "at this time." On March 7, 2003, the trial court held the first probation review hearing. During the hearing, the trial court expressed disagreement with Mr. Claros's recommendation to terminate probation. This was followed by an order, issued on March 17, 2003, stating that "detailed reports of [M.O.R.'s] progress in sexual offender counseling are required before the Court can make any determination of whether to terminate probation." Specifically, the trial court requested that the progress report outline M.O.R.'s prospects for recidivism and suggest the length of time M.O.R. should remain in therapy. On May 27, 2003, the court received a report from Mr. Claros stating that he had spoken to M.O.R.'s therapist, Pablo Moro, who advised him that appellant was making progress in treatment and recommended that M.O.R. continue treatment for another six months. An "Addendum to the Progress Report for Review of Probation," filed the following day, however, attached a letter dated May 19, 2003 from the therapist in which he stated that M.O.R. had had difficulty attending meetings regularly until January 2003. In addition, the therapist explained that, although appellant had been more open about himself, "it has become apparent that there are serious concerns about his sexual offending problem." The therapist reported that appellant "has openly admitted to a long history of engaging in repeated sexual acts with various female children," but that he "fre-

quently minimizes the seriousness of his condition." He concluded that "this suggests that [M.O.R.] is a Pedophile and that he should be considered a high-risk sexual offender." Mr. Moro also noted that the disorder cannot be "cured," and that therapy could take "a year or longer." On May 30, 2003, the trial court held a second probation review hearing during which the trial court told the probation officer that "it might be appropriate for the Director of Social Services to seek an extension of the probationary period given the information from [M]r. Mor[o]'s report." The probation officer recommended that the status quo continue, and that the parties reconvene to reassess the situation a week before probation was set to expire in July. Although the trial judge expressed skepticism that M.O.R. would make significant enough progress before the current term of probation was set to expire, she recognized that the trial court "can't extend [the probation] on my own motion." When the probation officer reiterated his position, the trial judge asked him for his reasons not to seek the extension. Mr. Claros responded that the therapist viewed M.O.R.'s situation as a "disorder that cannot be cured"—setting the stage, perhaps, for treatment without end—and that appellant had achieved significant success on probation.

On July 3, 2003, twenty days before the one-year probation was to expire, the Office of the Attorney General filed a motion to extend probation by six months, citing D.C.Code § 16–2322(c), and appending a request for extension signed by probation officer Claros.[1] M.O.R. objected to the mo-

---

1. M.O.R. agreed to plead guilty to two counts of simple assault in exchange for the dismissal of charges of second-degree child sexual abuse and the government's agreement not to oppose probation for six months "if recommended in the social study." Appellant con-

tends that the government violated the terms of the plea agreement by moving to extend M.O.R.'s probation and by continuing to argue in the trial court and in this court that his probation should be extended. In light of our disposition, we need not decide whether the

tion to extend probation, relying on a June 25, 2003 "Sex Offender Assessment" performed by Dwight T. Colley, Psy.D., which revealed that M.O.R. did not meet at least two of the factors for diagnosis as a pedophile, and concluded that M.O.R. "does not appear to present a continuous threat to the community to sexually re-offend." Persuaded by Dr. Colley's assessment, Claros wrote in a progress report dated July 15, 2003 that he "recommended that the petition to extend [M.O.R.'s] probation be rescinded" and that M.O.R.'s probation "be allowed to expire" on July 23.

On July 18, 2003, the parties convened for a third review hearing. During the hearing probation officer Claros reiterated his position that, based upon Dr. Colley's report, he was rescinding his previous request to extend probation and that M.O.R.'s one year probation should be allowed to expire on July 23. Appellant concurred, arguing that pursuant to D.C.Code § 16–2322(c) the request to extend probation must come from the Director of Social Services and "that's not the situation here." Although the trial judge agreed that the decision was up to the Director of Social Services, she thought that she could review the Director's decision not to seek an extension of probation to determine whether it was "arbitrary, capricious or unsupported by the facts of any particular case." As a result, the trial judge indicated that she would hold a hearing "in the first instance to determine whether or not the rescission of the request to extend the probation is well-founded." She added that "depending on how the first hearing comes out," "a hearing to determine which of the two mental health professionals is right is appropriate." In the interim, the trial court issued an order that "the present probation shall continue."

July 23, 2003, the date that M.O.R.'s one year probation was set to expire, came and went with no action by the trial court. On August 15, 2003, M.O.R. opposed the extension of probation and moved to terminate all further proceedings as required by D.C.Code § 16–2322(e) and Super. Ct. Juv. R. 32(f)(4). Having received no ruling from the trial court, M.O.R. filed a petition for writ of mandamus in this court on August 22, 2003. That same day, the trial judge issued an order stating that a hearing would be held on the by-then withdrawn motion to extend probation, M.O.R.'s opposition to the extension of probation, and M.O.R.'s motion to terminate all further proceedings.

The trial court held two days of hearings on August 26 and 27, 2003, during which M.O.R.'s therapist and probation officer Claros testified. Specifically, Mr. Claros noted that initially he had received limited progress reports from the therapist and that the last report, received in February, stated that M.O.R. was a moderate risk to the community. It was not until later that Mr. Claros received a letter from the therapist dated May 19 stating that M.O.R. was a pedophile and a high risk to the community, and the countervailing June 25 sex offender assessment prepared by Dr. Colley stating that M.O.R. was not a pedophile and did not present a continuing threat to the community. After taking both reports into consideration, Mr. Claros explained, he withdrew his request to extend M.O.R.'s probation. When probed by the trial court, he acknowledged that it was difficult to reconcile both reports, and that after further consideration and discussion with his supervisor, he now believed that the trial court should rely on the therapist's report given that he had treated M.O.R. for a longer period of time

government breached its obligations under the plea agreement.

than Dr. Colley. As a result, probation officer Claros changed his mind again, this time recommending that M.O.R.'s probation should be extended. At the end of Mr. Claros's testimony, the trial court commented that, because the motion to extend probation had been filed by the Office of the Attorney General on behalf of the Director of Social Services, the running of the probationary period had been "tolled" until the trial court ruled on the motion. In addition, the court noted that "based upon the record as it stands now I can make the finding that the extension of the respondent's probationary period is necessary to protect his interests, and additionally is necessary to protect the interests of the community. However, just so that the record is complete, I want to complete the hearing . . . ." The trial court then proceeded to hear testimony from Dr. Colley, who testified, consistent with the views expressed in his assessment of June 25, that M.O.R. was not a pedophile and did not present a threat to the community. At the end of the hearing, the trial judge expressed the view that she could not rule on the motion to extend the probation because"[t]he matter is now before the Court of Appeals" on appellant's petition

for a writ of mandamus. She did, however, state that "[t]he status quo remains until the Court of Appeals rules one way or the other," i.e., that M.O.R. should continue to abide by the terms of his probation. Two days later, on August 29, 2003, M.O.R. filed a timely notice of appeal, a motion to stay pending appeal, and a motion for summary reversal. On September 9, 2003, a motions division of this court denied both motions and the petition for writ of mandamus.[2] Appellant's direct appeal is now before us.[3]

## II.

### Analysis

 This case presents the question of the trial court's authority to review the decision of the Director of Social Services concerning the extension of a juvenile's probation under D.C.Code § 16–2322(c) and the court's independent authority, if any, to defer termination of the proceedings once probation has come to an end. As a preliminary matter, the government argues that we do not have jurisdiction over this appeal because "the trial court has not issued an extension decision [of

**2.** On April 9, 2004, appellant filed a second motion for stay pending appeal noting that, due to normal appellate delay, he had in effect served more time on probation than the Office of the Attorney General requested in its motion to extend probation. After considering the District's opposition, we granted the motion for stay on April 27, 2004.

**3.** We note that the filing of the mandamus petition did not automatically preclude the trial court from ruling on the motion to extend probation. See Stebbins v. Stebbins, 673 A.2d 184, 193 (D.C.1996) ("declin[ing] to adopt a rule imposing an automatic stay of trial court proceedings whenever a party files a petition for an extraordinary writ" in the context of a request for jury trial). Nor does the filing of a notice of appeal divest the trial court of all power to act upon a motion that would affect the appealed order. As indicat-

ed in Smith v. Pollin, 90 U.S.App.D.C. 178, 178–80, 194 F.2d 349, 350 (1952), the proper procedure in such circumstances is for the trial court to consider the motion and notify the parties whether it is inclined to grant the relief sought. If so, we will remand the case upon request for further proceedings in the trial court that could obviate, or change the focus of, our appellate review. See Carter v. Cathedral Ave. Coop., Inc., 532 A.2d 681, 684 (D.C.1987). Moreover, the trial court is always free to consider and decide motions that are directed to changed circumstances and that do not directly challenge the appealed order. See Umana v. Swidler & Berlin, Chartered, 745 A.2d 334, 337 (D.C.2000). Thus, the trial court also should have considered appellant's Motion to Change Treatment Provider filed on October 21, 2003.

M.O.R.'s probation] and there is no final order for this court to review." Because we agree that mandamus is the appropriate form of relief in this case, we do not decide whether an appeal would lie from the trial court's order requiring him to continue to abide by the conditions of his probation pending a ruling on the Director of Social Services' request for an extension.[4] For the reasons that follow, we hold that it is clear beyond peradventure that the trial court does not have the statutory authority to review the Director's decision not to seek an extension of probation nor to, in effect, extend a juvenile's probationary period by continuing the proceeding in the trial court. Instead, the trial court was required by statute and court rule to issue a notice of termination upon expiration of the probationary period. *See* D.C.Code § 16–2322(e); Super. Ct. Juv. R. 32(f)(4).

## A. Mandamus

We first consider whether the issue presented meets the strict requirements for the issuance of a writ of mandamus. "It is well established that the writ of mandamus is an extraordinary remedy, available only in those few cases where a trial court has refused to exercise or has exceeded its jurisdiction." *Banov v. Hon. Henry Kennedy,* 694 A.2d 850, 857 (D.C.

1997) (citing *Roche v. Evaporated Milk Ass'n,* 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185 (1943)); *see also Bowman v. United States,* 412 A.2d 10, 12 (D.C.1980). "The requirements for issuance of a writ of mandamus are that the party seeking the writ must show that his right is 'clear and indisputable' and that he 'has no other adequate means to obtain relief.'" *Banov,* 694 A.2d at 857 (citing *Stebbins,* 673 A.2d at 193). "[I]ts primary use is 'to confine [a] ... court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.'" *Bowman,* 412 A.2d at 12 (quoting *Roche,* 319 U.S. at 26, 63 S.Ct. 938). A writ of mandamus is an extraordinary writ and should only be issued in "exceptional circumstances amounting to a judicial usurpation of power." *Yeager v. Hon. Henry Greene,* 502 A.2d 980, 983 (D.C. 1985) (internal quotation marks and citations omitted).[5]

We thus turn to the question of whether M.O.R. has demonstrated that the right he seeks to enforce on appeal is "clear and indisputable."

## B. The Statutory Framework

The code provides that a dispositional order such as the one in this case "may be extended for additional peri-

---

4. As noted in the previous section, the trial court continued the conditions of probation but mistakenly considered itself without authority to definitively rule on whether to extend probation because of the pending petition for mandamus. The situation thus created was one that placed appellant in a legal limbo that constrained his liberty. The stay we granted resolved the issue on a practical level by releasing M.O.R. from the terms of probation, see note 2, *supra,* and we now address the legal issues concerning the trial court's authority.

5. On September 9, 2003, a motions panel denied appellant's petition for writ of manda-

mus. *See M.O.R. v. Hon. Odessa Vincent,* No. 03–OA–47 (Sept. 9, 2003). However, we are free as the merits division to consider the petition anew unless the motions division has denied the petition with prejudice. *Cf. Kleinbart v. United States,* 604 A.2d 861, 867 (D.C. 1992) ("[W]hen a motions division denies a motion to dismiss or various other pretrial motions, 'such denials shall be deemed to be without prejudice to reconsideration by a Merits Division' unless expressly denied 'with prejudice.'") (quoting *District of Columbia v. Trustees of Amherst Coll.,* 499 A.2d 918, 920 (D.C.1985)).

ods of one year, *upon motion of the Director of Social Services,* if, after notice and hearing, the [Family] Division finds that extension is necessary to protect the interest of the child." D.C.Code § 16–2322(c) (emphasis added). "In interpreting a statute, we first look to the plain meaning of its language, and if it is clear and unambiguous and will not produce an absurd result, we will look no further." *In re D.H.,* 666 A.2d 462, 469 (D.C.1995) (citations omitted). "The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used." *Varela v. Hi–Lo Powered Stirrups, Inc.,* 424 A.2d 61, 64 (D.C.1980) (en banc) (quoting *United States v. Goldenberg,* 168 U.S. 95, 102–03, 18 S.Ct. 3, 42 L.Ed. 394 (1897)). A plain reading of the statute at issue here indicates that in order for the trial court to decide whether an extension is necessary to protect the interest of the child, the Director of Social Services must first move the trial court for an extension of the dispositional order. It then follows that, if the Director of Social Services decides not to seek an extension, the trial court does not have authority to extend the dispositional order. Appellant argues that his probationary period ended on July 23, 2003, because there was then no pending request for extension by the Director of Social Services—the initial request having been withdrawn—and the trial court had no authority to review a decision from the Director of Social Services not to request an extension of his probationary period. The government does not disagree that the request for extension must be initiated by the Director of Social Services—nor did the trial court—but argues that once the probation officer's initial motion recommending that appellant's probation be extended was filed, the judge's discretionary authority to extend probation was irrevocably triggered. In the government's

view, "the statute does not provide a mechanism for the probation officer to terminate the court's power by changing his recommendation." We think that the government's interpretation fails to recognize that given the statutory authority to initiate motions to extend probation, the Director of Social Services also must have the authority to withdraw a motion, especially in circumstances, like the one presented here, where the Director has had the opportunity to consider new evidence.

■■■ The trial court and the government cited to *In re T.L.J.,* 413 A.2d 154 (D.C.1980), for the proposition that the Attorney General has the authority to move to extend a child's probation, despite the plain language of D.C.Code § 16–2322(c). The government's reliance is misplaced. In *In re T.L.J.,* we held that under subparagraph (b) of D.C.Code § 16–2322, the Attorney General has standing to file a motion to extend a commitment order, noting that the Attorney General represents the District of Columbia Government and its agencies, including the Social Rehabilitation Agency which had custody of the child in that case. 413 A.2d at 158. These agencies are recognized by subparagraph (b), which provides that "[a] dispositional order vesting legal custody of a child in an agency or institution may be extended for additional periods of one year, *upon motion of the department, agency, or institution to which the child was committed ....*" D.C.Code § 16–2322(b) (emphasis added). Requests for extension under subsection (c), the statutory provision at issue in this case, however, are limited to those made "upon motion of the Director of Social Services." D.C.Code § 16–2322(c). Thus, our holding in *T.L.J.* is inapplicable. Although in this case the Office of the Attorney General presented to the trial court the probation officer's initial request to extend probation, that

action could only have been taken on behalf of the Director and did not transfer to the Attorney General the authority granted by the statute to the Director of Social Services to seek extension of probation. *See also In re M.C.S.*, 555 A.2d 463, 465 (D.C.1989) (stating that the office of the Director of Social Services "is a court agency distinct from ... an administrative agency within the executive branch of the District government."). The probation officer's written report of July 15, rescinding the request for extension, reiterated at the court hearing on July 18, effectively withdrew the motion filed by the Attorney General and precluded the trial court from ordering that M.O.R.'s probation be extended.[6]

A review of the broad role of the Director of Social Services in delinquency proceedings supports our interpretation of D.C.Code § 16–2322(c). The Director of Social Services has "charge of all juvenile social services for the Superior Court" and "shall provide intake procedures, counseling, education and training programs, probation services, and such other services as the court shall prescribe." D.C.Code § 11–1722(a) (2001). In addition, the Director of Social Services "shall have power to take into custody and place in detention or shelter care ... children who are under his supervision as delinquent, in need of supervision, or neglected, children on probation and under the Director's supervision, when the Director has reasonable cause to believe they have violated one or more conditions of their probation, or children who have run away from agencies or

institutions to which they were committed under this subchapter." D.C.Code § 16–2337 (2001). The Director also has the power to discharge a child from a consent decree. *See* D.C.Code § 16–2314(b) & (d) (2001). In addition, the Director is authorized to deny the release of a child to his parent, guardian, or custodian if the Director finds that detention or care is required under section 16–2310. *See* D.C.Code § 16–2311(b)(1) (2001).

The legislature has clearly defined the role of the Director of Social Services by providing when the Director may act unilaterally and when the Director must act in consultation with the Attorney General. For example,

> [c]omplaints alleging delinquency, need of supervision, or neglect shall be referred to the Director of Social Services who shall conduct a preliminary inquiry to determine whether the best interest of the child or the public require that a petition be filed. If judicial action appears warranted, ... the Director shall recommend that a petition be filed. If the Director decides not to recommend the filing of a petition, the complainant ... shall have a right to have that decision reviewed by the [Attorney General] ....

D.C.Code § 16–2305(a) (2001). The legislature has also established when the Attorney General must act in consultation with the Director. For example, if a child "fails to fulfill the express conditions of [a consent] decree or a new delinquency or need of supervision petition is filed concerning the child, the original petition under which

---

**6.** For purposes of this opinion we assume what no one has questioned: that the probation officer had delegated authority to present the decision of the Director of Social Services in court concerning appellant's probation. When probation officer Claros rescinded the request to extend probation at the July 18 hearing, the trial court required that the Di-

rector be present at the follow-up hearing along with the probation officer. Denise Robinson, the Acting Director of Social Services (for Moses McCallister), attended the August hearing. Such an extraordinary requirement can wreak havoc on an agency operating with defined lines of delegated authority.

the decree was filed may, in the discretion of the Attorney General following consultation with the Director of Social Services, be reinstated." D.C.Code § 16–2314(c).

Likewise, the legislature has clearly defined when the Attorney General has an exclusive role in delinquency proceedings. For example,

> [e]ach petition shall be prepared by the [Attorney General] after an inquiry into the facts and a determination of the legal basis for the petition. If the Director of Social Services has refused to recommend the filing of a delinquency ... petition, the [Attorney General], on request of the complainant, shall review the facts presented and shall prepare and file a petition if he believes such action is necessary to protect the community or the interest of the child. Any decision of the [Attorney General] on whether to file a petition shall be final.

D.C.Code § 16–2305(c). The Attorney General may move the trial court to suspend proceedings and continue the child under supervision, without commitment, under terms and conditions established by rules of the Superior Court. *See* D.C.Code § 16–2314(a). The Attorney General may also file a motion requesting transfer of the child for criminal prosecution pursuant to D.C.Code § 16–2307(a) (2001).

Focusing on the length of dispositional orders, the thrust of the statutory scheme is to provide an outer limit, *see, e.g.,* § 16–2322(a)(2) (two years); § 16–2322(a)(3) (one year); § 16–2322(a)(4) (indeterminate period not to exceed twenty-first birthday); § 16–2322(b) (one-year extension);

§ 16–2322(c) (one-year extension), subject to *earlier* termination at the discretion of a specified person or entity. In this case, the Director of Social Services is the person with statutory authority to terminate probation before its expiration date. *See* D.C.Code § 16–2322(a)(3).[7]

Given the degree of specificity with which Congress assigned the roles and responsibilities of the Director of Social Services and the Attorney General under the Act, we conclude that Congress intended to give the Director of Social Services sole authority to decide whether to seek an extension of a probationary period under § 16–2322(c). Consistent with due process concerns that a child who is subject to an extension of a dispositional order receive proper notice and a hearing to determine if such an extension is warranted, § 16–2322(c) gives the trial court the authority to consider and decide upon the Director's request to extend a dispositional order. When the Director elects not to seek an extension of probation, the trial court may inquire about—but not review—the Director's reasons for not doing so, as the statute reposes that decision ultimately with the Director, not the court. Thus, we conclude that M.O.R. had a "clear and indisputable" right to be released from the conditions of probation upon expiration of the initial one-year probationary period imposed by the trial court. *Cf. Sumpter v. United States,* 564 A.2d 21, 24 (D.C.1989) (holding that trial court is without authority to revoke probation after expiration of probationary term unless the court's statutory authority to extend probation has

---

7. At oral argument counsel for the government conceded that even if the trial court had authority to extend the probationary period by questioning the decision of the Director of Social Services not to seek an extension, the Director could immediately choose to terminate the extension pursuant to D.C.Code § 16–2322(a)(3). Such an absurd result reveals the fallacy of interpreting the statute (unsupported by its plain meaning, as explained in the text) to permit the trial court to act contrary to the expressed wishes of the Director.

been preserved during probationary term). The statute and applicable court rule also clearly provide that the child, parent, guardian or custodian, and the child's attorney, are to be given written notice of termination and of the right to move for sealing of records as provided in D.C.Code § 16–2335 (2001). *See* D.C.Code § 16–2322(e); Super. Ct. Juv. R. 32(f)(4).

## C. Application to This Case

Having set out the legal provisions, their application to this case is straightforward. When the one year probationary period expired on July 23, 2003, the trial court had no pending request for extension from the Director of Social Services, as the Director's initial request for extension had been withdrawn. Although the probation officer subsequently had yet another change of heart at the August hearing, by that point the one-year probationary period—the maximum the statute permits without a request for extension from the Director, *see* D.C.Code § 16–2322(a)(3) & (c)—had expired. The trial court was understandably frustrated with the probation officer's changing recommendations, but in light of the clear delineation of statutory authority, the trial court had but one option: to issue a notice of termination on July 23, 2003.[8]

We therefore grant the petition for mandamus to confine the court "to a lawful exercise of its prescribed jurisdiction," *Bowman,* 412 A.2d at 12 (citation omitted), and remand the case with instructions that the trial court issue a notice of the termi-

nation of the dispositional order *nunc pro tunc* to July 23, 2003.

*So ordered.*

---

8. Part of what troubled the trial judge—and disturbs us as well—is the repeated change of mind by the probation officer assigned to appellant's case, and the sense one has that he never quite made up his mind whether the probation should be extended or not. Given the importance of the Director's judgment in this context, trial judges should be able to assume that a motion—whether to extend probation or to withdraw a prior such motion—represents the considered institutional decision of the Director of Social Services.