J-S68045-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF:  D.J.M., A Minor | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  K.W., Mother | No. 2021 EDA 2014 |

Appeal from the Decree and Order entered July 2, 2014,
in the Court of Common Pleas of Philadelphia County,
Family Court Division, at No(s): CP-51-AP-0000185-2014,
CP-51-DP-0000980-2012

BEFORE:    ALLEN, JENKINS and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:              **FILED DECEMBER 24, 2014**

K.W. ("Mother") appeals from the Decree and Order granting the Petition filed by the Philadelphia County Department of Human Services ("DHS"), and involuntarily terminating Mother's parental rights to her daughter, D.J.M. (born in November 2010) ("Child"), pursuant to section 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), and changing Child's permanency goal to adoption pursuant to section 6351 of the Juvenile Act, 42 Pa.C.S.A. § 6351.[1]  We affirm.

The trial court ably and adequately set forth the factual background and procedural history of this appeal, which we adopt herein.  *See* Trial Court Opinion, 8/25/14, at 1-4.

---

[1] The trial court voluntarily terminated the parental rights of Child's father, B.A.M. a/k/a B.M. ("Father"), in a separate Decree entered on July 2, 2014. Father has not filed an appeal, nor is he a party to this appeal.

On April 23, 2014, DHS filed Petitions to involuntarily terminate the parental rights of Mother and Father, and for a change of Child's permanency goal to adoption. On July 2, 2014, the trial court held an evidentiary hearing on the termination Petitions. At the hearing, separate counsel for Mother and Father agreed "to stipulate to the facts as alleged in the [P]etition and to the DHS exhibits[,] … not for the truth of the matter but if called to testify, DHS would testify to those [facts], and that those exhibits would be entered." N.T., 1/2/14, at 6. Javette Clayton ("Ms. Clayton"), a case manager from Halfway Social Services, was also present. *Id.* at 4. DHS presented the testimony of its social worker, Sue Jean Choi ("Ms. Choi"). *Id.* at 7-21. Ms. Choi was cross-examined by counsel for each parent, and by the Child Advocate, Lisa Barrimond, Esquire ("Attorney Barrimond"). *See id.* at 16-21.

On that same day, July 2, 2014, the trial court granted the Petition to involuntarily terminate Mother's parental rights to Child, and to change the permanency goal for Child to adoption. On July 14, 2014, Mother filed a Notice of Appeal, along with a Concise Statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

Mother raises the following claims for our review:

1. Whether the trial court committed reversible error, [*sic*] when it involuntarily terminated Mother's parental rights[,] where such determination was not supported by clear and convincing evidence under the [A]doption [A]ct, 23 Pa.C.S.A. § 2511(a)(1),(2), (5) and (8)?

- 2 -

2. Whether the trial court committed reversible error when it involuntarily terminated Mother's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical and emotional needs of [C]hild[,] as required by the [A]doption [A]ct, 23 Pa.C.S.A. § 2511(b)?

3. Whether[] the trial court erred because the evidence was overwhelming and undisputed that Mother, [*sic*] demonstrated a genuine interest and sincere, persistent, and unrelenting effort to maintain a parent-child relationship with her children?

4. Whether[] the trial court erred when it changed the goal to adoption when there did not exist clear and convincing evidence to do so?[2]

Mother's Brief at 4 (footnote added).

Mother argues that the trial court erred when it involuntarily terminated her parental rights under section 2511(a)(1), (2), (5), and (8), because the decision was not supported by clear and convincing evidence. *Id.* at 8. With regard to section 2511(a), Mother contends that she had completed or was working towards the completion of her Family Service Plan ("FSP") objectives at the time DHS filed the Petition to terminate her parental rights. *Id.* at 10-12. With regard to section 2511(b), Mother contends that DHS failed to show, by clear and convincing evidence, that

---

[2] In her brief, Mother fails to develop any legal argument concerning the goal change, and presents no discussion, citations to statutes or case law. "[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." ***In re W.H.***, 25 A.3d 330, 339 n.3 (Pa. Super. 2011). Accordingly, Mother has waived any challenge to the change of goal. However, even if Mother had complied with our appellate rules, we would conclude that her claim lacks merit.

there would be no detrimental effect on Child from severing the parent-child bond. *Id.* at 13-14.

We review an appeal from the termination of parental rights, in accordance with the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. **In re: R.J.T.**, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. **Id.**; [**In re:**] **R.I.S.**, 36 A.3d [567,] 572 [(Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. **Id.**; **see also Samuel Bassett v. Kia Motors America, Inc.**, [] 34 A.3d 1, 51 (Pa. 2011); **Christianson v. Ely**, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. **Id.**
>
> As [the Pennsylvania Supreme Court] discussed in **R.J.T.**, there are clear reasons for applying an abuse of discretion standard of review in these cases. [The Court] observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. **R.J.T.**, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. **In re Adoption of Atencio**, 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we will focus on section 2511(a)(2) and (b), which provides, in relevant part, as follows:

### § 2511. Grounds for involuntary termination

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

- 5 -

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003)

(citations omitted).

[Section] 2511(a)(2) provides statutory grounds for termination of parental rights where it is demonstrated by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent."[].

[The Pennsylvania Supreme Court] has addressed incapacity sufficient for termination under § 2511(a)(2):

A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded

that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.

*In re Adoption of J.J.*, … 515 A.2d 883, 891 (Pa. 1986) (quoting *In re: William L.*, … 383 A.2d 1228, 1239 (Pa. 1978)).

*In re Adoption of S.P.*, 47 A.3d at 827.

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court recently stated that,

[i]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

Our careful review discloses competent evidence that supports the trial court's credibility and weight assessments regarding section 2511(a)(2). In its Opinion, the trial court set forth its findings and determined that the conditions that led to Child's removal continue to exist, and will not be remedied by Mother in the near future. *See* Trial Court Opinion, 8/25/14, at 5-8. The trial court's findings are supported by the record, and its legal conclusions are sound. Accordingly, we affirm on the basis of the trial court's Opinion with regard to its assessment of this factor. *See id.*

In applying section 2511(b), the trial court found that Child's foster parents provide for all of her daily needs, and take Child to the hospital and to her medical appointments. Trial Court Opinion, 8/25/14, at 8. The trial court found that Child's foster parents comfort her when she is sick, and have enrolled her in school. *Id.* The competent evidence of record supports the trial court's findings, and its conclusion that the termination of Mother's parental rights best serves Child's needs and welfare is sound. *Id.* at 8, 10.

Additionally, the trial court found that Child was placed in foster care in June 2012, when she was one year, seven months old. *Id.* at 3. The trial court found that Mother seldom attends her visits with Child, and when she does attend, she is under the influence of alcohol and/or drugs, and the visit is cancelled. *Id.* As a result, the trial court found that Mother and Child lack a parent/child bond. *Id.* at 8. By contrast, the trial court found that Child has a parent/child bond with her foster parents. *Id.*

We have stated that, in conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). This Court has observed that no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated. *In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008). Finally, it is appropriate to consider a child's bond with her foster parents. *See In re:*

***T.S.M.***, 71 A.3d at 268. Here, the trial court determined that there is an absence of any bond with Mother that would harm Child if severed. ***See*** Trial Court Opinion, 8/25/14, at 8, 10. The trial court's finding is supported by the record, and we adopt its Opinion with regard to its analysis of subsection (b). ***See id.***

Finally, we address the remainder of Mother's third issue, *i.e.*, that the trial court erred in terminating her parental rights because of overwhelming and undisputed evidence demonstrating Mother's sincere interest in maintaining a parent-child relationship with Child. Mother's Brief at 14. While Mother may love Child, she has failed to show that she is capable of parenting her. A parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. ***In re Z.P.***, 994 A.2d at 1121. Mother's claim therefore does not entitle her to relief.

We conclude that the trial court did not abuse its discretion in finding competent evidence to support the termination of Mother's parental rights under section 2511(a)(2) and (b). ***See In re Adoption of S.P.***, 47 A.3d at 826-27. Accordingly, we affirm the Decree and Order terminating Mother's parental rights to Child, and changing Child's permanency goal to adoption, on the basis of the trial court's Opinion entered on August 25, 2014.

Decree and Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/24/2014


Circulated 12/18/2014 04:15 PM

IN THE COURT OF COMMON PLEAS
FOR THE COUNTY OF PHILADELPHIA
FAMILY COURT DIVISION

In Re: D.J.M.                                  : CP-51-AP-0000185-2014
                                               : CP-51-DP-0000980-2012

APPEAL OF: K.W., Mother                        : 2021 EDA 2014

**OPINION**

**Fernandes, J.:**

Appellant, K.W. ("Mother"), appeals from the order entered on July 2, 2014, granting the petition filed by the Department of Human Services of Philadelphia County ("DHS") to involuntarily terminate her parental rights to D.J.M. ("Child") pursuant to the Adoption Act, 23 Pa.C.S.A. §2511 (a) (1), (2), (5), (8), and (b). Joseph A. Capozzoli, Esquire, counsel for Mother, filed a timely notice of appeal with a Statement of Matters Complained Of on appeal pursuant to Rule 1925 (b).

**Factual and Procedural Background**

On October 27, 2011, DHS received a General Protective Services ("GPS") report alleging that Mother was found in an unresponsive state with the Child. After EMS staff determined that Mother was under the influence of heroine, Mother and Child were transported to the Temple University Hospital-Episcopal Campus Emergency Department and placed together in a room. Upon arrival Mother was described as unkempt, agitated, and uncooperative. The report alleged that when they arrived to the hospital, Mother was unable to state Child's name. Mother was observed falling asleep while sitting upright and lying on the top of the Child while in the hospital room. Mother was described as "completely doped out" under the influence of heroin, and incapable of caring for the Child, who was subsequently placed in a room separated from Mother's room. Mother tested positive for opiates, benzodiazepines, and oxycodone and was diagnosed with drug dependency and bipolar disorder.

On October 27, 2011, maternal grandmother was contacted and agreed to retrieve Child from the hospital. A safety plan was implemented by DHS and agreed and signed by Child's maternal

grandparents. The plan stated maternal grandparents would provide appropriate care and supervision for the Child; that there would not be unsupervised Mother-Child contact, who also resided in the home; and that in the event of an emergency, grandparents would contact DHS. On October 28, 2011, another safety plan was implemented by DHS and agreed and signed by Child's maternal grandparents. The plan included the same actions agreed to in the previous safety plan which was to ensure Child's basic needs, including food, shelter, clothing, and medication, if needed, and to contact the police and DHS if Child's father attempts to remove Child from the home. On November 29, 2011, In-Home Protective Services ("IHPS"), through Best Nest, was implemented to assist the Mother with services for substance abuse, mental health treatment, and to ensure the Child was appropriately supervised and safe in the home.

On January 9, 2012, the initial Family Service Plan ("FSP") was developed. Child's goal was to remain in the home. Mother's objectives were to continue to provide Child with regular and nutritious meals and appropriate clothing at all times; to participate in evaluation for drug/alcohol abuse; to comply with all treatment, recommendations made as a result of a drug and alcohol evaluation; to enroll in and complete drug and alcohol treatment; to submit to random drug screens as part of the drug and alcohol treatment plan, to provide DHS and the service provider agency with documentation of enrollment in a drug and alcohol treatment program and completion of the drug and alcohol treatment; to participate in a mental health evaluation; to comply with all treatment recommendations made as a result of their mental health evaluation; to provide documentation of mental health evaluation, treatment program enrollment, and completion of mental health treatment; to take Child to all her medical appointments as scheduled; to provide DHS and the service provider agency with copies of Child's immunization records and any other medical information; to enroll in and complete parenting classes; to provide DHS and the service provider agency with documentation of enrolment and completion of parenting classes, to comply with IHPS and allow IHPS worker in the home to assess Child's safety and welfare; and comply with the safety plan developed by DHS. Mother attended the FSP meeting and signed the FSP objectives.

On March 2012, Mother began receiving behavioral healthcare services at Greater Philadelphia Health Action, Inc. DHS learned that Mother was diagnosed with Bipolar disorder, anxiety and that she was prescribed medication to treat her symptoms. On March 2, 2012, DHS learned that

Mother was allegedly using drugs, and that she has asked the IHPS social worker for money and for medication for occasional pain. Mother had not provided DHS or IHPS with documentation about her compliance with mental health treatment, drug screens results, nor drug treatment. Mother refused treatment options suggested by IHPS social worker. On March 31, 2012, IHPS social worker made an unscheduled visit and observed that Child was safe and her needs were being met; however, Mother, who was also at maternal grandparents home, appeared to be under the influence of drugs. On April 4, 2012, DHS learned that Mother did not require narcotics to manage her mental needs. On April 7, 2012, DHS learned that Mother was prescribed Vicodin; however, she was not taking the medication as prescribed and exhausted her supply of medication prematurely. On May 13, 2012, DHS learned that Mother was allegedly using heroin and continued to abuse her prescription medications, which included Xanax and Percocet. DHS also learned that Mother left the Child in grandparent's care when she was under the influence of drugs. On May 18, 2012, DHS learned that the IHPS worker observed that Child was outside unsupervised and ran into the street, but was uninjured.

On June 13, 2012, the Child was adjudicated dependent and was placed in foster care through Jewish Family and Children's Service, where she currently remains. Mother was referred to Behavioral Health System ("BHS") for grief counseling, to the Achieving Reunification Center ("ARC") to address goals of parenting skills, financial counseling and employment job training, to the Clinical Evaluation Unit ("CEU") for an assessment of dual diagnosis, and offered weekly supervised visits at the agency.

On June 13th, June 18th, and July 10th of 2012, Mother tested positive for opiates and benzodiazepines. Mother indicated she was taking prescriptions, but failed to provide any documentation. During Mother's evaluation at the CEU, Mother reported an extensive drug and mental health history.

At every permanency review hearing, Mother has been found either not compliant or minimally compliant. Mother hardly even attends her visits with the Child. When she does attend, on some occasions, Mother is under the influence of alcohol and/or drugs, whereby the visit is cancelled. Mother continuously fails to provide drug screens, and when she does avail herself her drug screens are positive for drug use. On April, 23, 2014, DHS filed a petition for Goal Change/ Termination. On July 2, 2014, the trial court terminated Mother's parental rights. On July 2,

2014, parents were present in the courthouse in the morning, and were told the case would be heard at 1:30 pm. Parents left the courthouse, but never came back. Both Mother and Father counsel stipulated to the facts as alleged on the termination petition.

**Discussion:**

On appeal, Mother raised the following issues:

1. Did the trial court err in terminating Mother's parental rights due to DHS' failure to meet its burden of proof under the Adoption Act, 23 Pa.C.S.A. §2511 (a) (1), (2), (5), and (8)?

2. Did the trial court err in terminating Mother's parental rights without giving primary consideration to the effect that termination would have on the physical and emotional needs of the Child as required by the Adoption Act, 23 Pa.C.S.A. §2511 (b)?

3. Did the trial court err in terminating Mother's parental rights because the evidence overwhelmingly and undisputedly demonstrated Mother's genuine interest and Mother's sincere, persistence, and unrelenting effort to maintain a parent-child relationship with her Child?

4. Did the trial court err in changing the goal to adoption due to DHS failure to meet its burden of proof?

For purposes of this opinion, Mother's third and fourth issues will be combined for analysis and discussion.

As to the first issue in this opinion, the grounds for involuntary termination of parental rights are enumerated in the Adoption Act at 23 Pa.C.S.A. §2511(a). The Adoption Act provides the following grounds for involuntary termination:

**(a) General rule** - The rights of a parent, in regards to a child, may be terminated after a petition is filed on any of the following grounds:

(1)The parent, by conduct continuing for a period of at least six months immediately preceding the filing of the petition, has either evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

In proceedings to involuntary terminate parental rights, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for termination. *In re Adoption of Atencio*, 539 Pa. 161, 650 A.2d 1064 (1994). To satisfy section (a) (1), the moving party must produce clear and convincing evidence of conduct sustained for at least six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. The standard of clear and convincing evidence is defined as testimony that is so clear, direct weighty and convincing as to enable the trier of fact to come to a clear conviction without hesitance of the truth of precise facts in issue. *In re D.J.S.*, 1999 Pa. Super. 214 (1999).

Mother did not achieve all of her FSP objectives through the life of case (N.T. 7/2/14, pgs. 9-10). Mother was aware of her FSP objectives. All the services were offered to help Mother reunify with her Child (N.T. 7/2/14, pgs. 11-12). The record establishes that DHS provided and offered reasonable and adequate services to remedy the conditions that brought the Child into care. In spite of her attendance at parenting classes, she was unable to apply the skills learned. (N.T. 7/2/14, pg. 10). Mother never reached the point in which she could obtain unsupervised visitation (N.T. 7/2/14, pg. 9), and she was not consistent with her visitations (N.T. 7/2/14, pg. 19). Mother visits have actually been reduced to bi-weekly supervised (N.T. 7/2/14, pg. 20). Mother never obtained employment and adequate housing (N.T. 7/2/14, pg. 9). Mother's mental health treatment has remained an objective throughout the life of the case (N.T. 7/2/14, pg. 8). The same can be said about Mother's drug and alcohol treatment (N.T. 7/2/14, pg. 9). Mother has been in and out of various drug treatment programs over the course of the case. She has been discharged from every one of her drug treatment programs for non-compliance (N.T. 7/2/14, pgs. 18).

The petition for termination was filed on April 28, 2014. Since 2011, Mother has been continuously failing to perform her parental duties toward the Child (N.T. 7/2/14, pgs. 7, 8-10, 13). Mother's pattern of non-compliance continued for at least six months prior to the filing of the termination petition, as established by the trial court permanency review orders from September 10th and December 11th of 2013, and on May 2nd of 2014. As a result, all the elements of the Adoption Act, 23 Pa.C.S.A. §2511 (a) (1) have been fully satisfied.

The Adoption Act at 23 Pa.C.S.A. §2511(a) (2) also includes, as a ground for involuntary termination of parental rights, the repeated and continued incapacity, abuse, neglect or refusal of the parent that causes the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being, and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent. This ground is not limited to affirmative misconduct. It may include acts of refusal to perform parental duties but more specifically on the needs of the child. *Adoption of C.A.W.*, 683 A.2d 911, 914 (Pa. Super. 1996). Courts have further held that the implications of the parent's limited success with services geared to remedy the barriers to effective parenting can also satisfy the requirements of §2511 (a) 2. *In the matter of B.L.W.*, 843 A.2d 380 (Pa. Super. 2004), the court's grave concerns about the Father's ability to provide the level of protection, security and stability that his child needed was sufficient to warrant termination. Id. at 388.

Child's lack of care and supervision led to her dependency adjudication and to her placement in foster care on June 13, 2012. Mother's substance abuse history and mental heath issues caused the Child to be without care and supervision. On June 18, 2012, fives days after Child dependency adjudication, Mother tested positive for opiates and benzodiazepines (DHS Exhibit 9). Still on September 10, 2013, Mother tested positive for opiates, benzodiazepines and cannabinoid (DHS Exhibit 32). Mother did not comply with her drug and alcohol assessment with CEU on December 15, 2013. As of the day of the termination hearing on July 2, 2014, Mother had consistently failed and refused to remedy the causes that brought Child into care (N.T. 7/2/14, pgs. 7, 9, 10, 18). Mother continues to have a substance abuse problem and mental health issues without complying with her treatment (N.T. 7/2/14, pgs. 8-10). Mother is unable to provide the level of protection, security and stability that the Child needs (N.T. 7/2/14, pg. 9-10). Child has been in placement for a period of twenty-four months (N.T. 7/2/14, pg. 4). The Child needs permanency; consequently, DHS has met its burden under 23 Pa.C.S.A. §2511 (a) (2).

DHS also requested termination of parental rights under 23 Pa.C.S.A. §2511 (a) (5), whereby child may be removed by court or voluntary agreement and placed with an agency at least six months, conditions which led to the placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services reasonably

available to the parent are not likely to remedy the conditions leading to placement, and termination best serves the child's needs and welfare.

DHS, as a children and youth agency, cannot be required to extend services beyond the period of time deemed as reasonable by the legislature or be subjected to herculean efforts. A child's life cannot be put on hold in hope that the parent will summon the ability to handle the responsibilities of parenting. *In re J.T.*, 817 A.2d 509 (Pa. Super. 2001). As a consequence, Pennsylvania's Superior Court has recognized that the child's needs and welfare requires agencies to work toward termination of parental rights when a child has been placed in foster care beyond reasonable temporal limits and after reasonable efforts for reunification have been made by the agency, that have resulted unfruitful. This process should be completed within eighteen months. *In re N.W.*, 851 A.2d 508 (Pa. Super. 2004).

The Child has been in care for a period of twenty-four months (N.T. 7/2/14, pg. 4). Mother's substance abuse, health mental issues and lack of parental skills caused Child's lack of care and supervision. Mother continues to be unable to summon the ability to handle her responsibilities of parenting (N.T. 7/2/14, pgs. 8-10, 14, 17-20). Hence, Mother mental issues, long history of drug use, and lack of parental skills compel this court to conclude that Child is no closer to be reunified with Mother as to when the Child came into care. Child's life cannot be put on hold any longer in hope that the Mother will remedy the conditions that led to placement within a reasonable amount of time. Mother was aware of her FSP objectives, but was unable to complete them within twenty-four months (N.T. 7/2/14, pgs. 11-12). The needs and welfare of the Child dictate that DHS met its burden as to the Adoption Act, 23 Pa.C.S.A. §2511 (a) (5).

As to §2511 (a) (8) of 23 Pa.C.S.A., DHS met its burden by clear and convincing evidence that the Child has been out of Mother's care for twelve months or more, and the conditions leading to the placement still exist, and termination would best serve the needs and welfare of the Child. Child has been continuously under DHS' custody for a period of twenty-four months (N.T. 7/2/14, pg. 4). The conditions that led to the Child's placement still exist (N.T. 7/2/14, pgs. 8, 9, 10, 11, 18). Despite the good faith efforts of DHS to make services available (N.T. 7/2/14, pg. 13), it is in the best interest of the Child to terminate Mother's parental rights (N.T. 7/2/14, pg. 14).

The trial court will now consider Mother's second issue on appeal. In order to terminate parental rights, the party seeking termination must also prove by clear and convincing evidence that the termination is in the best interest of the child. Also the best interest of the child is determined after consideration of the needs and welfare of the child, such as love comfort, security and stability. *In re Bowman*, 436 Pa. Super. 647, A.2d 217 (1994). See also *In re Adoption of T.T.B.*, 835 A.2d 387, 397 (Pa. Super. 2003). Pursuant to 23 Pa.C.S.A. §2511 (b), the trial court must also consider what, if any bond exists between Father and child. *In re Involuntary Termination of C.W.S.M. and K.A.L.M.*, 839 A.2d 410, 415 (Pa. Super. 2003). The trial court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship". *In re Adoption of T.B.B.*, 387, 397 (Pa.Super.2003). In assessing the parental bond, the trial court is permitted to rely upon the observations and evaluations of social workers. *In re K.Z.S.*, 946 a.2d 753,762-763 (Pa. Super. 2008). Under 23 Pa.C.S.A. §2511 (b), the rights of a parent also shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical, if found to be beyond the control of the parent.

The Child will not suffer any irreparable harm by terminating Mother's parental rights (N.T. 7/2/14, pg. 14). Foster parents provide for Child daily needs (N.T. 7/2/14, pg. 13). In addition, foster parents take the Child to the hospital and to medical appointments (N.T. 7/2/14, pg. 13). Foster parents comfort the Child when she is sick (N.T. 7/2/14, pg. 13) and enrolled her in school (N.T. 7/2/14, pg. 13). Foster parents and Child have a parent child/bond (N.T. 7/2/14, pg. 14) while Mother and Child do not have a parent child/bond (N.T. 7/2/14, pg. 15).

It is in the best interest of Child to be adopted (N.T. 7/2/14, pg. 14). Moreover, the termination of Mother's parental rights will not cause irreparable harm to the Child since there is no parent/child bond. The court determined that the testimonies of the DHS witnesses were credible. Additionally, the record clearly establishes that Mother's parental rights are being terminated due to her lack of non-compliance with her FSP objectives, no parent/child bond, causing no irreparable harm if it is severed and not due to environmental factors.

As to the last issue on appeal, which combines for analysis and discussion Mother's third and fourt issues raised on appeal, Mother contends that the trial court erred in changing the goal from reunification to adoption. Mother also contends that the court erred in terminating her parental

rights due to her genuine interest and persistence effort to maintain a parent-child relationship. In changing a goal from reunification to adoption, Pennsylvania Juvenile Act recognizes family preservation as one of its primary purposes. *In interest of R.P. A Minor*, 957 A.2d 1205 (Pa. Super. 2008). As a result, welfare agencies must make reasonable efforts to reunify the biological parents with their children. Nonetheless, if those efforts fail, the agency must redirect its efforts toward placing the child in an adoptive home. Agencies are not required to provide services indefinitely when a parent is unwilling or unable to apply the instructions received. *In re R.T.*, 778 A.2d 681 (Pa. Super. 2001). State agencies cannot be required to extend services beyond the period of time deemed as reasonable by the legislature. A child's life cannot be put on hold in hope that the parent will summon the ability to handle the responsibilities of parenting. *In re J.T.*, 817 A.2d 509 (Pa. Super. 2001). Pennsylvania's Superior Court has recognized that the child's needs and welfare requires agencies to work toward termination of parental rights when a child has been placed in foster care beyond reasonable temporal limits and after reasonable efforts for reunification have been made by the agency, that have resulted unfruitful. This process should be completed within eighteen months. *In re N.W.*, 851 A.2d 508 (Pa. Super. 2004).

The record and testimony of the witnesses established that DHS provide reasonable and adequate services to Mother. Reasonable efforts were found by the court in the Permanency Review Hearings on the following dates: June 13th, July 3rd, October 3rd and December 5th of 2012; again on February 13th, June 13th, September 10th and December 11th of 2013 and as well as on May 2nd and July 2nd of 2014. DHS developed the initial FSP objectives for Mother (N.T. 7/2/14, pg. 8). Throughout the life of the case, DHS held regular FSP meetings (N.T. 7/2/14, pgs. 8, 11). Mother was given notice of her FSP objectives and had knowledge about the objectives established (N.T. 7/2/14, pgs.11-12, 17). Mother's initial objectives were drug and alcohol treatment with random drug tests, mental health treatment, to provide DHS with the documents verifying her compliance with them, supervised visits with the Child, employment, parenting classes, obtaining safe and adequate housing and maintaining contact with the agency (N.T. 7/2/14, pg. 8). The record establishes that DHS provided and offered reasonable and adequate services to remedy the conditions that brought the Child into care.

With respect to Mother's compliance with her FSP objectives, Mother has not succeeded in achieving all of them (N.T. 7/2/14, pgs. 8-9). In spite of Mother's completion of parenting classes, she never applied the skills learned (N.T. 7/2/14, pgs. 10, 14). The record established that Mother has never been able to consistently be in full compliance during the life of the case. In 2012, the trial court found Mother minimally compliant on October 3rd and December 5th. In 2013, despite Mother's substantial compliance with her FSP objectives on February 13th and full compliance on June 13th, Mother was found minimally compliant on September 10th and December 11th. Although DHS filed termination petitions on April 28, 2014, Mother continued to be minimally compliant on May 2nd and July 2nd, 2014.

In spite of all the services provided by DHS, Mother is still unable to fulfill her parental duties. The child has been in placement for twenty-four months (N.T. 7/2/14, pg. 4) and she needs permanency. Consequently, the trial court did not err in terminating Mother's parental rights and changing the goal to adoption, it is in the best interest of the Child due to Mother's inability to assume her parental duties and her minimal compliance with the FSP objectives after twenty-four months. The Mother cannot place the Child's life on hold in hope she will acquire the ability to resume her parental duties (N.T. 7/2/14, pgs. 9-10).

**Conclusion:**

For the aforementioned reasons, the court finds that DHS met its statutory burden by clear and convincing evidence regarding the termination of the parental rights pursuant to 23 Pa.C.S.A. § 2511 (a) and (b). The court also finds that it will not cause irreparable harm to the Child to sever any bond, and it is in the best interest of the Child since it would best serve the emotional needs and welfare of the Child.

Accordingly, the order entered on July 2, 2014, terminating the parental rights of Mother K.W. should be affirmed.

By the court

Joseph Fernandes          J.