J-S29016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.H.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: B.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3582 EDA 2016 |

Appeal from the Order Entered October 31, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  CP-51-AP-0000940-2016,
CP-51-DP-0001859-2015, FID: 51-FN-000560-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: T.L., III, A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: B.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3604 EDA 2016 |

Appeal from the Order Entered October 31, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  CP-51-AP-0000939-2016,
CP-51-DP-0000685-2015, FID: 51-FN-0005060-2015

BEFORE: LAZARUS, J., SOLANO, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY SOLANO, J.:                    **FILED MAY 16, 2017**

Appellant B.R. ("Mother") appeals from the October 31, 2016 orders

granting petitions filed by the Philadelphia Department of Human Services

("DHS") for involuntary termination of her parental rights to her children,

_____

[*] Former Justice specially assigned to the Superior Court.

T.L., born December 2013, and J.H.R., born May 2015 (collectively, "the Children"). Upon careful review, we affirm.

The trial court set forth the facts and procedural history of this case as follows:

The family in this case first became involved with DHS on January 16, 2014, when DHS received a report that Mother had been assaulted by [T.L.'s father] while Mother was holding [T.L.]. Mother and [T.L.] were living at a domestic violence shelter, and DHS transferred the case to a Community Umbrella Agency ("CUA") which implemented in-home services. CUA then learned that [T.L.] had been hospitalized several times for seizures. On January 20, 2015, [T.L.] suffered third degree burns while being bathed by Mother, and had to be hospitalized. On January 28, 2015, DHS and CUA visited Mother and [T.L.]. [T.L.]'s breathing was labored, and DHS directed Mother to administer [T.L.]'s inhaler. During subsequent visits, [T.L.]'s breathing was again labored and he was not receiving doses from his prescribed inhaler. On March 17, 2015, DHS received a report that [T.L.] had been hospitalized twenty times since July 2014 [and] had missed a number of medical appointments, [and] that Mother was seven months pregnant with a high-risk pregnancy and was incapable of taking care of [T.L.]. DHS obtained an Order of Protective Custody and removed [T.L.], placing him in a kinship foster home. On April 14, 2015, [T.L.] was adjudicated dependent and fully committed to DHS custody.

On July 2, 2015, DHS received a report that [J.H.R.] lived in a home where drugs were sold, and showed signs of physical abuse. DHS obtained an Order of Protective Custody on July 7, 2015, and placed him in kinship foster care. The trial court adjudicated [J.H.R.] dependent on August 19, 2015, fully committing him to DHS custody. CUA developed a Single Case Plan ("SCP") with objectives for Mother, but over the course of 2015 and 2016, Mother failed to complete her objectives. On October 11, 2016, DHS filed petitions to terminate Mother's parental rights to the Children.

At the goal change [and] termination trial on October 31, 2016, the CUA case manager [Kenyuana Jenkins] testified that Mother's SCP objectives in this case were to obtain a mental

health assessment and attend the Achieving Reunification Center ("ARC") for housing services, parenting classes, job training and a healthy relationships class. Mother was also ordered to attend the Children's medical appointments and visit the Children regularly. [Ms. Jenkins] discussed these objectives with Mother during SCP meetings, and gave her copies of the SCP, which Mother signed. [Ms. Jenkins] referred Mother to ARC, where she completed housing and parenting classes. Mother does not have stable housing, and moves between domestic violence shelters. Mother currently lives in an illegal boarding house. Mother began doing a healthy relationships class at ARC voluntarily. CUA then added the class to Mother's SCP objectives because she was already complying. Mother then stopped attending the class, *because* it had become an objective. Mother never engaged in domestic violence counselling at the domestic violence shelters she lived in. Mother needs individual therapy because of the domestic violence she suffered. [Ms. Jenkins] referred Mother, but she attended only one session, explaining that she had to work and had no time to engage in therapy. Mother used to attend the Children's medical appointments, but has not gone to any recently.

[J.H.R.] adores his foster parent, and looks to her for all his needs. During visits, Mother does not engage the Children on an age-appropriate level. Mother is sometimes offended when redirected by CUA during visits. She often lets [J.H.R.] walk around the visitation area without interacting with him. During visits [J.H.R.] sometimes becomes agitated and Mother cannot calm him down. When this occurs, the foster parent is the only one who can soothe [J.H.R.]. Mother's ability to calm [J.H.R.] has not increased since Mother completed parenting classes. [According to Ms. Jenkins, t]he Children would not suffer irreparable harm if Mother's rights were terminated. [J.H.R.] is "giddy" and excited to return to his foster parent when visits are over. He calls the foster parent "mom." [T.L. also calls his foster parent "mom," and he looks to her for care and comfort.] The Children are not harmed when Mother does not visit. They are placed in pre-adoptive homes, and it is in their best interest to be adopted.

Mother has missed more than ten visits out of the last twenty which were scheduled, and has always visited inconsistently. Mother was given extra visitation time to make up for missed

visits, but Mother told CUA that she was overwhelmed and asked that the extra time be cancelled.

The foster parent of [J.H.R.] testified that [J.H.R.] has lived with her for fifteen months. The foster parent needed to calm [J.H.R.] before nearly every visit with Mother. [J.H.R.] displays no trouble separating from Mother when visits are over.

Mother testified that she last engaged in mental health treatment in April 2016, when her therapist told her it was no longer needed. Mother never provided any documents from her therapist showing that her treatment had concluded successfully. Mother testified that she began, but did not finish, healthy relationships classes, domestic violence counselling and a parenting capacity evaluation. Mother testified that she has no appropriate housing at this time. Mother testified that "I'm one of the best parents" and she deserved to have the Children returned to her. Following argument, the trial court found that Mother was not credible, and that DHS's witnesses were credible.

Trial Ct. Op., 12/22/16, at 1-3 (some formatting added, citations to the record omitted).

At the conclusion of the hearing, the trial court granted the petitions to terminate Mother's parental rights to the Children pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b), and changed the Children's goals to adoption.[1] On November 18, 2016, Mother filed timely notices of appeal. This Court consolidated the appeals *sua sponte.*

On appeal, Mother presents the following issue for our review:

Whether the trial court erred in [i]nvoluntarily terminating Mother's parental rights [p]ursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and (8) where it was not supported by

---

[1] The trial court also terminated the parental rights of the Children's fathers, who did not appeal. *See* Trial Ct. Op. at 3 n.1.

- 4 -

clear and convincing evidence when Mother completed a substantial portion of her SCP goals?

Appellant's Brief at 5. Mother challenges only the trial court's conclusions with respect to 23 Pa.C.S. § 2511(a); she does not challenge the trial court's conclusion pursuant to § 2511(b) or the change of the permanency goal to adoption.

We consider Mother's issue in light of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Section 2511 of the Adoption Act provides:

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). "In termination cases, the burden is upon DHS to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid." **In re R.N.J.**, 985 A.2d 273, 276 (Pa. Super. 2009).

As Mother does not raise an issue in her brief with respect to Section 2511(b), we review the subject orders with respect to Section 2511(a) only. **See Krebs v. United Refining Co. of Pa.**, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that any issue not set forth in or suggested by an appellate brief's Statement of Questions Involved is deemed waived under Pa.R.A.P. 2116(a)).

Mother argues that the trial court erred in terminating her parental rights despite her completion of "a substantial part of her objectives." Appellant's Brief at 9. Mother notes that Ms. Jenkins testified that Mother completed a parenting class and a housing workshop. Mother also cites her own testimony that she attended mental health treatment until she no longer needed it; completed an anger management program; consistently visited the Children and missed only two visits; had a job where she worked on commission; and wanted an opportunity to be reunited with the Children. **Id.** at 10.

After careful review of the record, Mother's Brief,[2] and the trial court's decision, we affirm on the basis of the trial court's opinion by the Honorable Joseph Fernandes. **See** Trial Ct. Op. at 4-10 (holding clear and convincing evidence existed to terminate Mother's parental rights under 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8) where the Children had been in placement for twenty and sixteen months, respectively; Mother knew her objectives but failed or refused to complete them; J.H.R. cried during visits with Mother and Mother could not calm him; and the Children were in pre-adoptive foster homes and it would be in their best interest to terminate Mother's parental rights so that the Children could be adopted).[3] Because we discern no abuse of discretion or error of law, we affirm the orders below. **See T.S.M.**, 71 A.3d at 267. The parties are instructed to include the attached trial court decision in any filings referencing this Court's decision.

Orders affirmed.

---

[2] DHS did not file a brief.

[3] Although parental rights may be involuntarily terminated if any one subsection of Section 2511(a) is fulfilled, we are satisfied that the record substantiates the trial court's determinations with respect to all four subsections at issue.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/16/2017

# IN THE COURT OF COMMON PLEAS
# FOR THE COUNTY OF PHILADELPHIA
# FAMILY COURT DIVISION

| | | |
|---|---|---|
| In the Interest of T.L., a Minor | : | CP-51-DP-0000685-2015 |
| | : | CP-51-AP-0000939-2016 |
| In the Interest of J.H.R., a Minor | : | CP-51-DP-0001859-2015 |
| | : | CP-51-AP-0000940-2016 |
| | : | |
| | : | FID: 51-FN-000560-2015 |
| | : | |
| APPEAL OF: B.R., Mother | : | 3582/3604 EDA 2016 |

## OPINION

**Fernandes, J.:**

Appellant B.R. ("Mother") appeals from the order entered on October 31, 2016, granting the petition filed by the Philadelphia Department of Human Services ("DHS"), to involuntarily terminate Mother's parental rights to T.L. ("Child 1") and J.H.R. ("Child 2") ("Children") pursuant to the Adoption Act, 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8) and (b). Emily Cherniak, Esq., counsel for Mother, filed a timely Notice of Appeal with a Statement of Matters Complained of on Appeal pursuant to Rule 1925(b).

## Factual and Procedural Background:

The family in this case first became involved with DHS on January 16, 2014, when DHS received a report that Mother had been assaulted by T.L. ("Father"), Child 1's father, while Mother was holding Child 1. Mother and Child 1 were living at a domestic violence shelter, and DHS transferred the case to a Community Umbrella Agency ("CUA") which implemented in-home services. CUA then learned that Child 1 had been hospitalized several times for seizures. On January 20, 2015, Child 1 suffered third degree burns while being bathed by Mother, and had to be hospitalized. On January 28, 2015, DHS and CUA visited Mother and Child 1. Child 1's breathing was labored, and DHS directed Mother to administer Child 1's inhaler. During subsequent visits, Child 1's breathing was again labored and he was not receiving doses from his prescribed inhaler. On March 17, 2015, DHS received a report that Child 1 had been hospitalized twenty times since July 2014, had missed a number of medical appointments, that Mother was seven months pregnant with a high-risk pregnancy and was incapable of taking care of Child 1.

DHS obtained an Order of Protective Custody and removed Child 1, placing him in a kinship foster home. On April 14, 2015, Child 1 was adjudicated dependent and fully committed to DHS custody. On July 2, 2015, DHS received a report that Child 2 lived in a home where drugs were sold, and showed signs of physical abuse. DHS obtained an Order of Protective Custody on July 7, 2015, and placed him in kinship foster care. The trial court adjudicated Child 2 dependent on August 19, 2015, fully committing him to DHS custody. CUA developed a Single Case Plan ("SCP") with objectives for Mother, but over the course of 2015 and 2016, Mother failed to complete her objectives. On October 11, 2016, DHS filed petitions to terminate Mother's parental rights to the Children.

At the goal change termination trial on October 31, 2016, the CUA case manager testified that Mother's SCP objectives in this case were to obtain a mental health assessment and attend the Achieving Reunification Center ("ARC") for housing services, parenting classes, job training and a healthy relationships class. Mother was also ordered to attend the Children's medical appointments and visit the Children regularly. (N.T. 10/31/16, pgs. 20-22, 33). The CUA case manager discussed these objectives with Mother during SCP meetings, and gave her copies of the SCP, which Mother signed. (N.T. 10/31/16, pgs. 20, 30, 37, 41). The CUA case manager referred Mother to ARC, where she completed housing and parenting classes. (N.T. 10/31/16, pgs. 21-22). Mother does not have stable housing, and moves between domestic violence shelters. (N.T. 10/31/16, pg. 23). Mother currently lives in an illegal boarding house. (N.T. 10/31/16, pg. 65). Mother began doing a healthy relationships class at ARC voluntarily. CUA then added the class to Mother's SCP objectives because she was already complying. Mother then stopped attending the class, *because* it had become an objective. (N.T. 10/31/16, pgs. 73-74). Mother never engaged in domestic violence counselling at the domestic violence shelters she lived in. (N.T. 10/31/16, pg. 75). Mother needs individual therapy because of the domestic violence she suffered. The CUA case manager referred Mother, but she attended only one session, explaining that she had to work and had no time to engage in therapy. (N.T. 10/31/16, pgs. 33-35). Mother used to attend the Children's medical appointments, but has not gone to any recently. (N.T. 10/31/16, pg. 44). Child 2 adores his foster parent, and looks to her for all his needs. (N.T. 10/31/16, pg. 44). During visits, Mother does not engage the Children on an age-appropriate level. (N.T. 10/31/16, pg. 47). Mother is sometimes offended when redirected by CUA during visits. She often lets Child 2 walk

around the visitation area without interacting with him. (N.T. 10/31/16, pgs. 48-49). During visits Child 2 sometimes becomes agitated and Mother cannot calm him down. When this occurs, the foster parent is the only one who can soothe Child 2. Mother's ability to calm Child 2 has not increased since Mother completed parenting classes. (N.T. 10/31/16, pg. 50). The Children would not suffer irreparable harm if Mother's rights were terminated. (N.T. 10/31/16, pg. 51). Child 2 is "giddy" and excited to return to his foster parent when visits are over. He calls the foster parent "mom." (N.T. 10/31/16, pg. 52). The Children are not harmed when Mother does not visit. They are placed in pre-adoptive homes, and it is in their best interest to be adopted. (N.T. 10/31/16, pgs. 53-54). Mother has missed more than ten visits out of the last twenty which were scheduled, and has always visited inconsistently. (N.T. 10/31/16, pgs. 55-56, 58). Mother was given extra visitation time to make up for missed visits, but Mother told CUA that she was overwhelmed and asked that the extra time be cancelled. (N.T. 10/31/16, pg. 78).

The foster parent of Child 2 testified that Child 2 has lived with her for fifteen months. (N.T. 10/31/16, pg. 83). The foster parent needed to calm Child 2 before nearly every visit with Mother. (N.T. 10/31/16, pgs. 84-85). Child 2 displays no trouble separating from Mother when visits are over. (N.T. 10/31/16, pg. 87). Mother testified that she last engaged in mental health treatment in April 2016, when her therapist told her it was no longer needed. Mother never provided any documents from her therapist showing that her treatment had concluded successfully. (N.T. 10/31/16, pgs. 89-90, 100). Mother testified that she began, but did not finish, healthy relationships classes, domestic violence counselling and a parenting capacity evaluation. (N.T. 10/31/16, pgs. 92-93, 104). Mother testified that she has no appropriate housing at this time. (N.T. 10/31/16, pg. 98). Mother testified that "I'm one of the best parents" and she deserved to have the Children returned to her. (N.T. 10/31/16, pg. 97). Following argument, the trial court found that Mother was not credible, and that DHS's witnesses were credible. (N.T. 10/31/16, pg. 113). The trial court then terminated Mother's parental rights to the Children under 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8) and (b), and changed their permanency goal to adoption.[1] On November 18, 2016, Mother filed this appeal.

---

[1] The trial court also terminated the parental rights of the fathers and putative fathers of the Children at this hearing. None of these individuals have appealed.

**Discussion:**

On appeal, Mother alleges that the trial court erred in "Involuntarily terminating Mother's parental rights Pursuant to 23 Pa.C.S.A. §2511(a)(1), (2), (5) and (8) where it was not supported by clear and convincing evidence when Mother completed a substantial portion of her SCP goals." Mother has not appealed the change of the Children's permanency goals to adoption, or whether the trial court erred or abused its discretion in terminating Mother's parental rights pursuant to 23 Pa.C.S.A. §2511(b), so Mother has waived those issues on appeal.

Mother has appealed the involuntary termination of her parental rights. The grounds for involuntary termination of parental rights are enumerated in the Adoption Act at 23 Pa.C.S.A. §2511(a), which provides the following grounds for §2511(a)(1):

> **(a) General rule** - The rights of a parent, in regard to a child, may be terminated after a petition is filed on any of the following grounds:
>
> (1) The parent, by conduct continuing for a period of at least six months immediately preceding the filing of the petition, has either evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

In proceedings to involuntarily terminate parental rights the burden of proof is on the party seeking termination, which must establish the existence of grounds for termination by clear and convincing evidence. *In re Adoption of Atencio*, 650 A.2d 1064 (Pa. 1994). To satisfy Section (a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. However, the six-month time period should not be applied mechanically; instead, the court must consider the whole history of the case. *In re B.N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004). The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction without hesitance of the truth of precise facts in issue.

The petitions for involuntary termination were filed on October 11, 2016. During the six-month period prior to the filing of the petitions, Mother's SCP objectives were to engage in mental health treatment, obtain a job and appropriate housing, take parenting classes and a healthy relationships class. Mother was also ordered to attend the Children's medical appointments and visit the

Children regularly. (N.T. 10/31/16, pgs. 20-22, 33). Mother knew her objectives and signed her SCP. (N.T. 10/31/16, pgs. 20, 30, 37, 41). Mother has not been in mental health therapy for any portion of the six-month period. She testified that her therapist told her therapy was no longer necessary, but was unable to produce any documents to that effect. (N.T. 10/31/16, pgs. 33-35, 89-90, 100). Mother testified that she has not successfully completed healthy relationships classes, domestic violence counselling or a parenting capacity evaluation. (N.T. 10/31/16, pgs. 72-73, 92-93, 104). Mother has no appropriate housing at this time, and has often moved between domestic violence shelters. (N.T. 10/31/16, pgs. 23, 65, 98). Mother is employed, but she raised concerns about whether she could provide for herself and the Children on her commission-based earnings. (N.T. 10/31/16, pg. 97). Mother completed parenting classes, but has not shown any improvement in her parenting skills. (N.T. 10/31/16, pg. 50). Mother has not attended any medical appointments during the six-month period. (N.T. 10/31/16, pg. 44). Mother has missed half of her recent scheduled visits with the Children. (N.T. 10/31/16, pgs. 55-56, 58). Mother refused extra visitation time because she was overwhelmed. (N.T. 10/31/16, pg. 78). When Mother does visit, she cannot calm the Children down and often lets them walk around the visitation area without interacting with them. (N.T. 10/31/16, pgs. 48-51, 84-85). The Children are not harmed when Mother fails to appear for visits. (N.T. 10/31/16, pgs. 53-54, 87). For the entire six-month period prior to the filing of the petitions, Mother failed or refused to complete her objectives and place herself in a position to parent. As a result the trial court did not abuse its discretion by finding clear and convincing evidence that Mother, by her conduct, had refused and failed to perform parental duties and has evidenced a settled purpose to relinquish parental claim to the Children, so termination under this section was proper.

The trial court also terminated Mother's parental rights under 23 Pa.C.S.A. §2511(a)(2). This section of the Adoption Act includes, as a ground for involuntary termination of parental rights, the repeated and continued incapacity, abuse, neglect or refusal of the parent that causes the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent. This ground is not limited to affirmative misconduct. It may include acts of refusal to perform parental duties, but focuses more specifically on the needs of the child. *Adoption of C.A.W.*, 683 A.2d 911, 914 (Pa. Super. 1996).

Mother's objectives in this case were to engage in mental health treatment, obtain a job and appropriate housing, take parenting classes and a healthy relationships class. Mother was also ordered to attend the Children's medical appointments and visit the Children regularly. (N.T. 10/31/16, pgs. 20-22, 33). Mother knew her objectives and signed her SCP. (N.T. 10/31/16, pgs. 20, 30, 37, 41). A mental health assessment determined that Mother needs individual therapy because of the domestic violence she suffered. CUA made an appropriate referral, but Mother attended only one session, explaining that she had to work and had no time to engage in therapy. (N.T. 10/31/16, pgs. 33-35). Mother claims that she completed therapy in April 2016, when her therapist told her it was no longer needed. Mother never provided any documents from her therapist showing that her treatment had concluded successfully, and her testimony is not credible. (N.T. 10/31/16, pgs. 89-90, 100, 113). Mother is employed. Over the life of this case Mother has moved between a number of domestic violence shelters, illegal housing and family homes which were not appropriate for reunification. She does not have appropriate housing at this time. (N.T. 10/31/16, pgs. 23, 65, 98). Mother completed parenting classes, but these classes did not improve her ability to parent the Children. (N.T. 10/31/16, pgs. 21-22, 50). Mother began a healthy relationships class, which was added to her SCP objectives. Mother then stopped attending the class, *because* it had become an objective. (N.T. 10/31/16, pgs. 73-74). Mother used to attend the Children's medical appointments, but has not gone to any recently. (N.T. 10/31/16, pg. 44). Mother has missed more than ten visits out of the last twenty which were scheduled, and has always visited inconsistently. (N.T. 10/31/16, pgs. 55-56, 58). Mother refused extra make-up time for visits because she was overwhelmed. (N.T. 10/31/16, pg. 78). The Children do not suffer any ill effects when Mother misses visits. (N.T. 10/31/16, pgs. 53-54). During visits, Mother does not speak to the Children at an age-appropriate level and lets them walk around the visitation area unsupervised instead of interacting with them. (N.T. 10/31/16, pgs. 47-49). Child 2 often cries during visits, and Mother is unable to calm him down. (N.T. 10/31/16, pg. 50, 84-85). The Children separate easily from Mother when visits end. (N.T. 10/31/16, pg. 87). Mother testified that she began, but did not finish, most of her objectives. (N.T. 10/31/16, pgs. 92-93, 104). Mother's compliance with her objectives has actually declined over the life of this case: Mother has stopped visiting consistently, has stopped attending medical appointments, has stopped mental health treatment and been discharged from health relationships for non-attendance. The Children

need permanency, which Mother cannot provide. Mother has demonstrated that she is unwilling to remedy the causes of her incapacity to parent in order to provide the Children with essential parental care, control or subsistence necessary for their physical and mental well-being. Termination under this section was also proper.

Mother also appeals the trial court's termination of parental rights under 23 Pa.C.S.A. §2511(a)(5), which permits termination when a child was removed, by court or voluntary agreement, and placed with an agency if, for at least six months, the conditions which led to the placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services reasonably available to the parent are not likely to remedy the conditions leading to placement, and termination best serves the child's needs and welfare. DHS, as a child and youth agency, cannot be required to extend services beyond the period of time deemed as reasonable by the legislature or be subjected to herculean efforts. A child's life cannot be put on hold in hope that the parent will summon the ability to handle the responsibilities of parenting. *In re J.T.*, 817 A.2d 509 (Pa. Super. 2001). As a consequence, Pennsylvania's Superior Court has recognized that a child's needs and welfare require agencies to work toward termination of parental rights when a child has been placed in foster care beyond reasonable temporal limits and after reasonable efforts for reunification have been made by the agency, which have been ineffective. This process should be completed within eighteen months. *In re N.W.*, 851 A.2d 508 (Pa. Super. 2004).

The Children in this case have been in DHS custody since March 17, 2015 and July 7, 2015. The Children were placed because Mother was unable to meet their needs as a parent. Mother's objectives in this case were to engage in mental health treatment, obtain a job and appropriate housing, take parenting classes and a healthy relationships class. Mother was also ordered to attend the Children's medical appointments and visit the Children regularly. (N.T. 10/31/16, pgs. 20-22, 33). Mother knew her objectives and signed her SCP. (N.T. 10/31/16, pgs. 20, 30, 37, 41). A mental health assessment determined that Mother needs individual therapy because of the domestic violence she suffered. CUA made an appropriate referral, but Mother attended only one session, explaining that she had to work and had no time to engage in therapy. (N.T. 10/31/16, pgs. 33-35). Mother claims that she completed therapy in April 2016, when her therapist told her it was no longer needed. Mother never provided any documents from her therapist showing that her

treatment had concluded successfully, and her testimony is not credible. (N.T. 10/31/16, pgs. 89-90, 100, 113). Mother is employed. Over the life of this case Mother has moved between a number of domestic violence shelters, illegal housing and family homes which were not appropriate for reunification. She does not have appropriate housing at this time. (N.T. 10/31/16, pgs. 23, 65, 98). Mother completed parenting classes, but these classes did not improve her ability to parent the Children. (N.T. 10/31/16, pgs. 21-22, 50). Mother began a healthy relationships class, which was added to her SCP objectives. Mother then stopped attending the class, *because* it had become an objective. (N.T. 10/31/16, pgs. 73-74). Mother used to attend the Children's medical appointments, but has not gone to any recently. (N.T. 10/31/16, pg. 44). Mother has missed more than ten visits out of the last twenty which were scheduled, and has always visited inconsistently. (N.T. 10/31/16, pgs. 55-56, 58). Mother refused extra make-up time for visits because she was overwhelmed. (N.T. 10/31/16, pg. 78). Mother testified that she began, but did not finish, most of her objectives. (N.T. 10/31/16, pgs. 92-93, 104). Throughout the life of this case, DHS has made appropriate referrals, but they have been unavailing. Mother missed nearly half her visits, and refused the offered extra time, but this caused little harm to the Children. (N.T. 10/31/16, pgs. 53-56, 58, 78). In fact, the Children cry when they visit with Mother, and Mother cannot calm them. (N.T. 10/31/16, pgs. 51, 84-85). The Children separate easily from Mother when visits end. (N.T. 10/31/16, pg. 87). The Children are in pre-adoptive foster homes, and it is in their best interests to be adopted. (N.T. 10/31/16, pgs. 53-54). Child 2 is placed with a foster parent he "adores," and is "giddy" to see when visits with Mother end. The foster parent cares for all his needs, and is the only one able to calm him during visits. (N.T. 10/31/16, pgs. 44, 50, 52, 84-85). The trial court found at all review hearings for the life of this case that DHS made reasonable efforts to assist Mother with services. The conditions that brought the Children into care have not been remedied, and Mother's compliance has actually declined over the life of the case. Mother will not be able to remedy the conditions and place herself in a position to parent within a reasonable time. The Children need permanency and Mother is unable to provide it as of the time of trial. As a result, the trial court found that termination of Mother's parental rights was in the best interest of the Children for their physical, intellectual, moral and spiritual well-being. Because the trial court made these determinations on the basis of clear and convincing evidence, termination under this section was also proper.

The trial court also terminated Mother's parental rights under 23 Pa.C.S.A. §2511(a)(8), which permits termination when:

> The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

This section does not require the court to evaluate a parent's willingness or ability to remedy the conditions which initially caused placement or the availability or efficacy of DHS services offered to the parent, only the present state of the conditions. _In re: Adoption of K.J._, 938 A.2d 1128, 1133 (Pa. Super. 2009). The party seeking termination must also prove by clear and convincing evidence that the termination is in the best interest of the child. The best interest of the child is determined after consideration of the needs and welfare of the child such as love, comfort, security and stability. _In re Bowman_, A.2d 217 (Pa. Super. 1994). See also _In re Adoption of T.T.B._, 835 A.2d 387, 397 (Pa. Super. 2003).

The Children in this case have been in DHS custody since March 17, 2015 and July 7, 2015, twenty and sixteen months, respectively, at the time of trial. They were placed because Mother was unable to parent. At the time of trial, Mother has not successfully completed mental health treatment. (N.T. 10/31/16, pgs. 24, 34-35, 68, 89-90, 100-102). She does not have appropriate housing. (N.T. 10/31/16, pgs. 21, 23, 65, 98-99). Mother has not completed healthy relationships or domestic violence counselling. (N.T. 10/31/16, pgs. 22, 33-34, 70-71, 73-74, 92). Mother does not attend the Children's medical appointments. (N.T. 10/31/16, pg. 44). Mother misses half her visits. (N.T. 10/31/16, pgs. 55-56, 58). When she attends visits she is unable to calm or redirect the Children. (N.T. 10/31/16, pg. 47-50). The conditions which brought the Children into care still exist, and Mother in currently unable to parent. The Children cry when they visit with Mother, and Mother cannot calm them. (N.T. 10/31/16, pg. 51, 84-85). The Children separate easily from Mother when visits end. (N.T. 10/31/16, pg. 87). The Children are in pre-adoptive foster homes, and it is in their best interests to terminate Mother's parental rights so they can be adopted. (N.T. 10/31/16, pgs. 53-54). Child 2 is placed with a foster parent he "adores," and is "giddy" to see when visits with Mother end. The foster parent cares for all his needs, and is the only one able to calm him during visits. (N.T. 10/31/16, pgs. 44, 50, 52, 84-85). The testimony of DHS witnesses was unwavering and credible. (N.T. 10/31/16, pg. 113). Termination of Mother's parental rights

and adoption would best serve the needs and welfare of the Children. (N.T. 10/31/16, pgs. 53-54). Mother is not ready or able as of the time of trial to parent the Children full-time. Because the record contains clear and convincing evidence, the trial court did not abuse its discretion and termination under this section was also proper.

**Conclusion:**

For the aforementioned reasons, the court found that DHS met its statutory burden by clear and convincing evidence regarding termination of Mother's parental rights pursuant to 23 Pa.C.S.A. §2511(a)(1), (2), (5) and (8) since it would best serve the Children's emotional needs and welfare. The trial court's termination of Mother's parental rights was proper and should be affirmed.

By the court,

Joseph Fernandes J.