J-S29001-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: L.C.L., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.Z., MOTHER | No. 3516 EDA 2016 |

Appeal from the Order Entered October 14, 2016
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000424-2016,
CP-51-DP-0000998-2015

BEFORE: LAZARUS, J., SOLANO, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.: **FILED May 19, 2017**

M.Z. ("Mother") appeals from the order, entered in the Court of Common Pleas of Philadelphia County, terminating her parental rights to her child, L.C.L. ("Child"), (DOB 1/15).[1] After review, we affirm.

Mother had been involved with the Department of Human Services (DHS) since 2012, when Child Protective Services reported the near-fatal abuse of Child's half-sister, C.H. (2 years old), who suffered a severed spine, as well as bruising and abrasions of various ages, and the eye injuries and fractured shoulder of Child's other half-sister, E.H (3 years old). Both C.H. and E.H. were placed in foster care.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Father's rights were also terminated. **See** Order, 10/14/16. His appeal is not before us.

On July 22, 2013, Mother pled guilty to aggravated assault (F1) as to C.H., and endangering the welfare of a child as to E.H; she served eighteen months in prison. Child was born in January 2015; Mother neglected to inform DHS of Child's birth, and DHS became aware only as a result of a routine visit. DHS obtained an order of protective custody and, on April 20, 2015, following a shelter care hearing, the court lifted the protective order and ordered temporary commitment to DHS. The court granted Mother and Father supervised weekly visits and referred Mother to Behavior Health Services.

In May 2015, the court adjudicated Child dependent; the court also made a finding of aggravated circumstances against Mother based on her conviction of felony aggravated assault against C.H. On September 11, 2015, Mother voluntarily relinquished her rights to C.H. and E.H.

On May 12, 2016, DHS filed a petition to terminate Mother's parental rights and a petition to change Child's permanency goal to adoption. The court held hearings on June 24, 2016 and October 14, 2016. DHS presented the testimony of Dr. Erica Williams from Forensic Mental Health Services, and the testimony of Clarence Tillman, the DHS Social Work Services Manager. Mother testified on her own behalf and presented the testimony of the kinship foster parent, W.R.

Following the hearing, the court entered an order terminating Mother's parental rights to Child, and changing the goal to adoption. Mother appealed, and raises the following issues for our review:

1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, pursuant to 23 Pa.C.S.A. § 2511(a)(2), where Mother presented evidence that she made significant efforts to perform her parental duties, attended mental health treatments consistently and visited [Child] daily while in care.

2. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, pursuant to 23 Pa.C.S.A. § 2511(a)(5), where evidence was provided to establish that [Child] was removed from the care of Mother, however Mother is currently capable of caring for [Child] and the conditions that led to removal have been remedied.

3. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother pursuant to 23 Pa.C.S.A. § 2511(a)(8) where evidence was presented to show that Mother is currently capable of caring for [Child] and the conditions that led to removal have been remedied.

4. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother pursuant to 23 Pa.C.S.A. § 2511(b) where evidence was presented that clearly established that Mother has a parental bond with the child that would be detrimental to sever?

Appellant's Brief, at 7.

In an appeal from an order terminating parental rights, our scope of review is comprehensive:  We must consider all the evidence presented in addition to the trial court's factual findings and legal conclusions.  "However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict."  ***In re L.M.***, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

- 3 -

The party seeking the termination of parental rights bears the burden of proving that grounds for termination exist by clear and convincing evidence. . . . Although this court has stated that the standard of review for an appellate court in these matters is limited to the determination of whether the trial court's decree is supported by competent evidence, we have also explained that the factual findings of the trial court should not be sustained where the court has abused its discretion or committed an error of law. Thus, absent an abuse of discretion or error of law, where the trial court's findings are supported by competent evidence, an appellate court must affirm the trial court even though the record could support the opposite result. . . . Realizing the significance of such a decision, this Court adheres to the view that the trial court is in the best position to determine credibility, evaluate the evidence, and make a proper ruling.

*In re R.I.S*., 36 A.3d 567, 572 (Pa. 2016) (citations omitted).

Mother argues that DHS did not present clear and convincing evidence to support termination under section 2511(a)(2), (a)(5) or (a)(8).[2] She also

_____

[2] **(a) General rule**.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period

*(Footnote Continued Next Page)*

argues the court failed to adequately consider the needs and welfare of Child in concluding that termination was in Child's best interests under section 2511(b).[3]

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the trial court, we conclude that there is no merit to the issues Mother has raised on appeal. The trial judge, the Honorable Joseph Fernandes, properly disposed of the questions

_(Footnote Continued)_ ————————

of time and termination of the parental rights would best serve the needs and welfare of the child.

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. §§ 2511(a)(2), (a)(5), (a)(8).

[3]

**(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(b).

presented, concluding that: (1) Mother's only barrier to reunification was her refusal to acknowledge her role and responsibility in the abuse of her two other children, which prevented her from remedying the issue and establishing that she could safely parent Child; (2) Child has been in DHS custody since April 17, 2015, was placed because Mother was unable to safely meet Child's needs, and, despite meeting nearly all of her family service plan objectives, she "will not present with the capacity to parent" until she admits her role and works to remedy her conduct; and (3) DHS met its burden by clear and convincing evidence to prove that terminating Mother's parental rights was in the best interest of Child. See Trial Court Opinion, 12/21/16, at 4- 9. The trial court's determination is supported by competent evidence of record. Accordingly, we affirm on the basis of Judge Fernandes' opinion, and we direct the parties to attach a copy of that opinion in the event of further proceedings.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/19/2017

IN THE COURT OF COMMON PLEAS
FOR THE COUNTY OF PHILADELPHIA
FAMILY COURT DIVISION

In the Interest of L.C.L., a Minor      :      CP-51-DP-0000998-2015
     :      CP-51-AP-0000424-2016
     :      FID: 51-FN-001103-2012
     :
APPEAL OF: M.Z., Mother      :      3516 EDA 2016

**OPINION**

**Fernandes, J.:**

Appellant M.Z. ("Mother") appeals from the order entered on October 14, 2016, granting the petition filed by the Philadelphia Department of Human Services ("DHS"), to involuntarily terminate Mother's parental rights to L.C.L. ("Child") pursuant to the Adoption Act, 23 Pa.C.S.A. §2511(a)(2), (5), (8) and (b). Claire Leotta, Esq., counsel for Mother, filed a timely Notice of Appeal with a Statement of Matters Complained of on Appeal pursuant to Rule 1925(b).

**Factual and Procedural Background:**

The family in this case first became known to DHS on April 7, 2012, when DHS received a report that one of Child's siblings had been hospitalized for a severed spine injury, another sibling had serious bruising and bone injuries, and child abuse by Mother was suspected. Several of Child's siblings were adjudicated dependent and removed from Mother's care. Mother was convicted of child abuse of two of Child's siblings and imprisoned for some time, but was released in late 2014. On March 13, 2015, DHS visited Mother's home as part of their work on the case of the siblings. At this time, DHS first learned that Child – who had been born just three months before – was in Mother's care. Mother had attempted to conceal Child's birth from DHS. DHS obtained an Order of Protective Custody for Child on April 17, 2015, and placed him in foster care. Child was adjudicated dependent on May 7, 2015 and fully committed to DHS custody. The trial court found aggravated circumstances against Mother based on her criminal conviction for child abuse. Mother signed voluntary relinquishments of her parental rights to Child's siblings on September 11, 2015. At this point the Family Service Plan ("FSP") objectives developed by DHS for Mother during the siblings' cases were transferred to this case. Over the course of 2015 and 2016, Mother

did not complete her objectives. On May 12, 2016, DHS filed a petition to terminate Mother's parental rights to Child.

At the goal change termination trial on October 14, 2016,[1] Dr. Erica Williams, an expert who conducted a Parenting Capacity Evaluation ("PCE") testified. Dr. Williams testified that the injuries sustained by Mother's other children were not accidental, and that Mother's proffered explanation for the injuries was false. (N.T. 10/14/16, pgs. 18-19). When Dr. Williams interviewed Mother, Mother provided yet another explanation of the injuries, but this new explanation did not accord with the reported facts. (N.T. 10/14/16, pg. 20). During her interview Mother denied that she had abused the other children, though she had admitted her guilt in court and had served time for the abuse. (N.T. 10/14/16, pgs. 21-22, 30). Mother told Dr. Williams that she had plead guilty because she wanted to *leave* jail. (N.T. 10/14/16, pg. 23). Mother is diagnosed with PTSD, bipolar disorder and depression. (N.T. 10/14/16, pg. 24). Mother's performance on the PCE indicated intentional deception and invalidated many diagnostic protocols. Dr. Williams recommended Mother's individual therapy address domestic violence, Mother's incarceration and Mother's denial of the abuse offenses. (N.T. 10/14/16, pgs. 25-26). Mother's therapy currently addresses only her PTSD. (N.T. 10/14/16, pgs. 32-33). Mother does not present with the capacity to parent. She sees the same therapist as Father, and is totally dependent on Father for food and housing. (N.T. 10/14/16, pgs. 27-28).

The DHS social worker testified that Mother is fully compliant with her FSP objectives, but still denies the injury to the other children and her own role in it. Mother maintains she was not home at the time of the injury. (N.T. 10/14/16, pg. 40). Mother plead guilty to child abuse and served time in prison. (N.T. 10/14/16, pg. 41). Child will soon be moved to a pre-adoptive home with a kinship foster parent who has adopted his siblings, and it would be in his best interest to be adopted. (N.T. 10/14/16, pgs. 42-44, 47). Child is bonded with the kinship foster parent, and with his siblings. (N.T. 10/14/16, pgs. 44-45). Child separates easily from Mother at the end of visits. (N.T. 10/14/16, pg. 46). Child knows who Mother is, and is happy to see her. (N.T. 10/14/16, pg. 48). Mother visits Child almost every day. (N.T. 10/14/16, pgs. 49, 87).

---

[1] The trial court heard testimony as to Father only at a June 24, 2016 hearing.

Mother testified that she told contradictory stories about the other children's injuries in order to avoid a child neglect charge. (N.T. 10/14/16, pg. 55). She testified that her guilty plea to the criminal abuse charges was not genuine, and she had been tricked into confessing. (N.T. 10/14/16, pg. 56).

The current foster parent, W.R. testified that Child has lived with her for a year, but that she will not adopt Child. She seeks to return Child to Mother and Father, rather than allow Child to be placed in a pre-adoptive home with the kinship foster parent. (N.T. 10/14/16, pgs. 70, 81). Mother is supposed to have visits with Child five times a week in foster parent's home, but foster parent provides visits almost seven days each week. (N.T. 10/14/16, pgs. 71, 87). Foster parent only allows the kinship foster parent to visit child when parents are present in her home. (N.T. 10/14/16, pg. 86). Child asks for Mother and has a good relationship with her. (N.T. 10/14/16, pgs. 73, 75). However, Child has a hard time separating from the kinship foster parent. Child cries and cries in his sleep. (N.T. 10/14/16, pg. 77).

The trial court reiterated that it had found aggravated circumstances against Mother earlier in the life of the case. (N.T. 10/14/16, pg. 89). Following argument, the trial court then terminated Mother's parental rights to Child under 23 Pa.C.S.A. §2511(a)(1), (2), (5), (8) and (b), and changed his permanency goal to adoption.[2] On November 10, 2016, Mother filed this appeal.

**Discussion:**

On appeal, Mother alleges that the trial court erred or abused its discretion by:

1. Entering an order on October 14, 2016 involuntarily terminating the parental rights of Mother and changing Child's goal to adoption. More specifically, the trial court abused its discretion as substantial, sufficient and credible evidence was presented at the time of trial which would have substantiated denying the petition for goal change termination. DHS failed to meet its burden for termination by clear and convincing evidence under 23 Pa.C.S.A. §2511(a)(1), (2), (5) and (8) because Mother presented evidence that she met most of her goals.

---

[2] The trial court also terminated Father's parental rights on the same date. Father has also appealed. See *In the Interest of L.C.L.*, 3556 EDA 2016.

2. Terminating the parental rights of Mother and changing the goal to adoption, pursuant to 23 Pa.C.S.A. §2511(b) where DHS failed to prove by clear and convincing evidence that involuntarily terminating Mother's parental rights best served the emotional needs and welfare of Child. Evidence was presented that Child has a parental bond with Mother and termination **would** cause irreparable harm to Child.

Mother has appealed the involuntary termination of her parental rights under 23 Pa.C.S.A. §2511(a)(1), but the trial court did not terminate under this section. This opinion will only address the sections under which Mother's parental rights were actually terminated. (N.T. 10/14/16, pg. 97).

The trial court terminated Mother's parental rights under 23 Pa.C.S.A. §2511(a)(2). This section of the Adoption Act includes, as a ground for involuntary termination of parental rights, the repeated and continued incapacity, abuse, neglect or refusal of the parent that causes the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent. This ground is not limited to affirmative misconduct. It may include acts of refusal to perform parental duties, but focuses more specifically on the needs of the child. *Adoption of C.A.W.*, 683 A.2d 911, 914 (Pa. Super. 1996).

Mother's only outstanding barrier to reunification was acknowledging her role in the abuse of her other children, so that she can remedy the issue and parent Child safely. (N.T. 10/14/16, pgs. 35-36). The PCE recommended, and Dr. Williams testified, that Mother's individual therapy should address domestic violence, Mother's incarceration and Mother's denial of the child abuse offenses. (N.T. 10/14/16, pgs. 25-26). At the time of the PCE, Mother saw the same therapist as Father – an unacceptable conflict of interest. That therapist only addressed Mother's PTSD, not her role in the child abuse of the other siblings. (N.T. 10/14/16, pgs. 27-28, 32-33). Mother subsequently changed therapists, but this new therapist has structured therapy to avoid forcing Mother to deal with the child abuse issue directly. (N.T. 10/14/16, pg. 59). This has permitted Mother to remain in denial about the child abuse that she plead guilty to, resulting in time in prison. (N.T. 10/14/16, pgs. 18-22, 30). Mother is still in denial, testifying at trial that she was tricked into confessing, that the child abuse did not occur and that she confessed in order to avoid jail time. (N.T. 10/14/16,

pgs. 18-23, 30, 40, 56). Until Mother addresses the child abuse directly, admits her role and works to remedy her conduct, she will not present with the capacity to parent. (N.T. 10/14/16, pgs. 27-28). Mother has never admitted her role in the child abuse of the other siblings. Child needs a safe and permanent home, which Mother cannot provide. Even after a guilty plea on criminal child abuse charges, Mother has demonstrated that she is unwilling to remedy the causes of her incapacity to parent in order to provide Child with essential parental care, control or subsistence necessary for his physical and mental well-being. Mother refuses to admit her role in the severe child abuse suffered by Child's siblings in order to parent Child safely. Termination under this section was also proper.

Mother also appeals the trial court's termination of parental rights under 23 Pa.C.S.A. §2511(a)(5), which permits termination when a child was removed, by court or voluntary agreement, and placed with an agency if, for at least six months, the conditions which led to the placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services reasonably available to the parent are not likely to remedy the conditions leading to placement, and termination best serves the child's needs and welfare. DHS, as a child and youth agency, cannot be required to extend services beyond the period of time deemed as reasonable by the legislature or be subjected to herculean efforts. A child's life cannot be put on hold in hope that the parent will summon the ability to handle the responsibilities of parenting. *In re J.T.*, 817 A.2d 509 (Pa. Super. 2001). As a consequence, Pennsylvania's Superior Court has recognized that a child's needs and welfare require agencies to work toward termination of parental rights when a child has been placed in foster care beyond reasonable temporal limits and after reasonable efforts for reunification have been made by the agency, which have been ineffective. This process should be completed within eighteen months. *In re N.W.*, 851 A.2d 508 (Pa. Super. 2004).

Child in this case has been in DHS custody since April 17, 2015, when DHS first learned that Child had been born. Child was placed because Mother was unable to safely meet his needs as a parent. Throughout the life of this case, DHS developed appropriate FSP objectives for Mother and made the appropriate referrals. In fact, Mother completed nearly all of her FSP objectives. (N.T. 10/14/16, pg. 40). Mother's only outstanding barrier to reunification was acknowledging her role in the abuse of her other children, so that she can remedy the issue and parent Child safely.

(N.T. 10/14/16, pgs. 35-36). The PCE recommended, and Dr. Williams testified, that Mother's individual therapy should address domestic violence, Mother's incarceration and Mother's denial of the abuse offenses. (N.T. 10/14/16, pgs. 25-26). At the time of the PCE, Mother saw the same therapist as Father – an unacceptable conflict of interest. That therapist only addressed Mother's PTSD, not her role in the abuse. (N.T. 10/14/16, pgs. 27-28, 32-33). Mother subsequently changed therapists, but this new therapist has structured therapy to avoid forcing Mother to deal with the child abuse issue directly. (N.T. 10/14/16, pg. 59). This has permitted Mother to remain in denial about the child abuse that she plead guilty to, resulting in time in prison. (N.T. 10/14/16, pgs. 21-22, 30). Mother is still in denial, testifying at trial that she was tricked into confessing, that the abuse did not occur and that she confessed in order to avoid jail time. (N.T. 10/14/16, pgs. 18-23, 30, 40, 56). Until Mother addresses the child abuse directly, admits her role and works to remedy her conduct, she will not present with the capacity to parent. (N.T. 10/14/16, pgs. 27-28). DHS made reasonable efforts in this case, but Mother's lack of progress in mental health therapy has meant that they were unavailing. Mother continues to deny that she had caused severe child abuse to Child's siblings, and has not even begun addressing it in therapy. Mother will not be able to remedy the causes of her incapacity within a reasonable time. Child needs permanency, which Mother cannot provide. Throughout his time in DHS care, Child has been placed with the foster parent and has had consistent contact with the kinship foster parent and his siblings, who live in the kinship foster parent's home. Foster parent is not an adoption resource, so Child will be moved to the kinship foster parent's home, which is a pre-adoptive home. (N.T. 10/14/16, pgs. 42-44, 47, 70, 81). Child is bonded with the kinship foster parent, and with his siblings. (N.T. 10/14/16, pgs. 44-45). Child knows who Mother is, and is happy to see her when she visits almost every day, but separates easily from her when she leaves. (N.T. 10/14/16, pg. 46-49). However, Child has a hard time separating from the kinship foster parent. Child cries and cries in his sleep. (N.T. 10/14/16, pg. 77). Kinship foster parent also visits, but the current foster parent makes it a requirement for parents to be present when she does. The current foster parent wants Child to go back to the biological parents and not the kinship foster parent. (N.T. 10/14/16, pgs. 81, 86). It is in Child's best interest to terminate Mother's parental rights so he may be adopted. (N.T. 10/14/16, pgs. 42-44, 47). As a result, the trial court found that termination of Mother's parental rights was in the best interest of Child for his physical, intellectual, moral and spiritual well-being. Because the

trial court made these determinations on the basis of clear and convincing evidence, termination under this section was also proper.

The trial court also terminated Mother's parental rights under 23 Pa.C.S.A. §2511(a)(8), which permits termination when:

> The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

This section does not require the court to evaluate a parent's willingness or ability to remedy the conditions which initially caused placement or the availability or efficacy of DHS services offered to the parent, only the present state of the conditions. *In re: Adoption of K.J.*, 938 A.2d 1128, 1133 (Pa. Super. 2009). The party seeking termination must also prove by clear and convincing evidence that the termination is in the best interest of the child. The best interest of the child is determined after consideration of the needs and welfare of the child such as love, comfort, security and stability. *In re Bowman*, A.2d 217 (Pa. Super. 1994). See also *In re Adoption of T.T.B.*, 835 A.2d 387, 397 (Pa. Super. 2003).

Child in this case has been in DHS custody since April 17, 2015, sixteen months at the time of the trial. He was placed because Mother was unable to parent safely. Mother's remaining barrier to being able to parent was squarely addressing the seriousness of the abuse suffered by her other children, and dealing with her own role in the abuse. (N.T. 10/14/16, pgs. 35-36). The PCE recommended, and Dr. Williams testified, that Mother's individual therapy should address domestic violence, Mother's incarceration and Mother's denial of the abuse offenses. (N.T. 10/14/16, pgs. 25-26). At the time of the PCE, Mother saw the same therapist as Father – an unacceptable conflict of interest. That therapist only addressed Mother's PTSD, not her role in the abuse. (N.T. 10/14/16, pgs. 27-28, 32-33). Mother subsequently changed therapists, but this new therapist has structured therapy to avoid forcing Mother to deal with the abuse issue directly. (N.T. 10/14/16, pg. 59). This has permitted Mother to remain in denial about the child abuse that she plead guilty to, resulting in time in prison. (N.T. 10/14/16, pgs. 21-22, 30). Mother is still in denial, testifying at trial that she was tricked into confessing, that the abuse did not occur and that she confessed in order to avoid jail time. (N.T. 10/14/16, pgs. 18-23, 30, 40, 56). Until Mother

addresses the child abuse directly, admits her role and works to remedy her conduct, she will not present with the capacity to parent safely. (N.T. 10/14/16, pgs. 27-28). Mother still vehemently denies any role in the abuse. The conditions which led to removal still exist. Child is being moved to kinship foster parent's home, since she is an adoptive resource. (N.T. 10/14/16, pgs. 42-44, 47, 70, 81). Child is bonded with kinship foster parent, and with his siblings, who live in the home. (N.T. 10/14/16, pgs. 44-45). Child knows who Mother is, and is happy to see her when she visits almost every day, but separates easily from her when she leaves. (N.T. 10/14/16, pg. 46-49). However, Child has a hard time separating from the kinship foster parent. (N.T. 10/14/16, pg. 77). It is in Child's best interest to terminate Mother's parental rights so that Child may be adopted. (N.T. 10/14/16, pgs. 42-44, 47). Child needs a safe, permanent home. Mother is not ready, willing or able as of today to parent Child safely full-time. The testimony of DHS witnesses was unwavering and credible. Because the record contains clear and convincing evidence, the trial court did not abuse its discretion and termination under this section was also proper.

After a finding of any grounds for termination under Section (a), the court must, under 23 Pa.C.S.A. §2511(b), also consider what - if any - bond exists between parent and child. *In re Involuntary Termination of C.W.S.M. and K.A.L.M.,* 839 A.2d 410, 415 (Pa. Super. 2003). The trial court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship". *In re Adoption of T.B.B.* 835 A.2d 387, 397 (Pa. Super. 2003). In assessing the parental bond, the trial court is permitted to rely upon the observations and evaluations of social workers. *In re K.Z.S.,* 946 A.2d 753, 762-763 (Pa. Super. 2008). In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis depends on the circumstances of the particular case. *In re K.Z.S.* at 762-763. However under 23 Pa.C.S.A. §2511(b), the rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care, if found to be beyond the control of the parent.

Mother has consistently visited with Child over the life of this case. In fact, she has had daily visits, more than the court-ordered five visits per week. (N.T. 10/14/16, pgs. 49, 71, 87). Foster parent supervised the visits, and testified that Mother has a relationship with Child, but that Child only cries a little bit when Mother has to leave. (N.T. 10/14/16, pgs. 73-75, 84). The foster parent,

who is actively working to return Child to Mother and Father, despite the child abuse conviction and Mother's continued denial of her role in the child abuse of the siblings, testified that Mother has a positive bond with Child. (N.T. 10/14/16, pgs. 70-71, 75, 81). This testimony was not credible. According to foster parent's testimony, Mother visits Child almost daily, and supposedly provides all parental care that Child needs. (N.T. 10/14/16, pgs. 71-73). The current foster parent does not want the kinship foster parent, an adoptive resource, to have Child. (N.T. 10/14/16, pg. 81). The trial court heard credible testimony that Child separates from Mother easily. However, Child has a hard time separating from the kinship foster parent at the end of visits. (N.T. 10/14/16, pg. 77). From this, the trial court properly inferred that Child will not suffer irreparable harm if Mother's rights were terminated. (N.T. 10/14/16, pg. 46). Child can develop relationships normally. Although Child is bonded with Mother, termination of Mother's parental rights would not destroy a necessary and beneficial relationship since Mother is not able to safely parent Child. (N.T. 10/14/16, pgs. 42-43). Child is less than two years old, and has been in DHS custody for sixteen months, the vast majority of his life. Any remaining bond with Mother is attenuated. It is in Child's best interest to be adopted. (N.T. 10/14/16, pgs. 42-44, 47). Child has a positive and growing relationship with the kinship foster parent. (N.T. 10/14/16, pg. 45). Consequently, the court did not abuse its discretion when it found that it was clearly and convincingly established that termination of Mother's parental rights would not destroy an existing beneficial relationship.

Mother also alleges that the court erred in changing Child's permanency goal from reunification to adoption. In a change of goal proceeding, the child's best interest must be the focus of the trial court's determination. The child's safety and health are paramount considerations. *In re A.H.*, 763 A.2d 873 (Pa. Super. 2000). Pennsylvania's Juvenile Act recognizes family preservation as one of its primary purposes. *In the Interest Of R.P. a Minor*, 957 A.2d 1205 (Pa. Super. 2008). As a result, welfare agencies must make efforts to reunify the biological parents with their child. Nonetheless, if those efforts fail, the agency must redirect its efforts toward placing the child in an adoptive home. Agencies are not required to provide services indefinitely when a parent is unwilling or unable to apply the instructions received. *In re R.T.*, 778 A.2d 670 (Pa. Super. 2001). The trial court should consider the best interest of the child as it exists presently, rather than the facts at the time of the original petition.

At the start of this case, Mother had been involved with DHS for years regarding her other children. Mother gave birth to Child, but DHS did not discover this for several months, since Mother acted to conceal Child's existence. Mother pleaded guilty to criminal child abuse of the other children, and served time in prison. (N.T. 10/14/16, pgs. 21-22, 30). The trial court found aggravated circumstances as to Mother in this case. (N.T. 10/14/16, pg. 89). Mother has offered a number of contradictory explanations of how the other children were injured, but has never admitted to her own role. (N.T. 10/14/16, pgs. 18-19, 40, 55). She minimizes the seriousness of the abuse they suffered. Until Mother addresses these issues directly in therapy, she will not have the capacity to parent Child safely. (N.T. 10/14/16, pgs. 27-28). To this day, Mother still denies the abuse that she admitted in the criminal case. (N.T. 10/14/16, pgs. 21-23, 30, 56). Her therapists have only addressed the issues which Mother wants to address: her PTSD and the difficulties of being imprisoned. (N.T. 10/14/16, pgs. 32-33, 59). The PCE recommended that Mother address her role in the abuse, but Mother has not done so. (N.T. 10/14/16, pgs. 25-26). Mother visits Child almost daily, but Child separates from her easily. (N.T. 10/14/16, pgs. 46, 84). Child has a positive and growing relationship with the kinship foster parent, and to his siblings who live in her home. It is in Child's best interest to be adopted. (N.T. 10/14/16, pgs. 42-45, 47). Because these facts were clearly and convincingly established by the credible testimony of DHS's witness, including Dr. Erica Williams, the trial court's change of permanency goal from reunification to adoption was proper.

**Conclusion:**

For the aforementioned reasons, the court found that DHS met its statutory burden by clear and convincing evidence regarding termination of Mother's parental rights pursuant to 23 Pa.C.S.A. §2511(a)(2), (5), (8) and (b) since it would best serve Child's emotional needs and welfare. Changing Child's permanency goal to adoption was in his best interest. The trial court's termination of Mother's parental rights and change of permanency goal to adoption was proper and should be affirmed.

By the court,

Joseph Fernandes J.

# IN THE COURT OF COMMON PLEAS
# FOR THE COUNTY OF PHILADELPHIA
# FAMILY COURT DIVISION

In the Interest of L.C.L., a Minor  :  CP-51-DP-0000998-2015
  :  CP-51-AP-0000424-2016
  :  FID: 51-FN-001103-2012
  :
APPEAL OF: M.Z., Mother  :  3516 EDA 2016
APPEAL OF: C.J.L., Father  :  3556 EDA 2016

## PROOF OF SERVICE

I hereby certify that this court is serving, today, December 21, 2016, the foregoing Opinion, by regular mail, upon the following persons:

Meagan Mirtenbaum, Esq.
1515 Arch Street, 16th Floor
Philadelphia, PA 19102
Counsel for DHS

Claire Leotta, Esq.
12325 Academy Rd Ste 52
Philadelphia, PA 19154-1927
Counsel for Mother

Barry Kassel, Esq.
Support Center for Child Advocates
1900 Cherry St
Philadelphia, PA 19103
Child Advocate

Douglas Dolfman
1617 JFK Blvd Suite 1660
Philadelphia, PA, 19103
Counsel for Father

C.J.L.
7204 Tulip Street
Philadelphia, PA 19135
Father

By: _____

Turner N. Falk
Law Clerk to the Hon. Joseph L. Fernandes
Philadelphia Court of Common Pleas, Family Division
1501 Arch Street, Room 1431
Philadelphia PA 19102  T: (215) 686-2660